PER CURIAM.
The Florida Bar, with the authorization of the Board of Governors, petitions the Court to amend the Rules Regulating the Florida Bar. We have jurisdiction. See art. V, § 15, Fla. Const.; R. Regulating Fla. Bar.
The proposed changes were published for comment in accordance with Rule Regulating the Florida Bar l-12.1(g). All but one comment filed addressed a proposed amendment which would have eliminated the deferral of the Basic Skills Course Requirement for government attorneys. After reviewing the comments opposing that amendment, the Bar withdrew the proposal in order to allow for discussion with the opponents to the amendment.
The remaining substantive proposed changes[1] include amendment to or the creation of the following rules, bylaws and subchapters: rule 1-3.2 (Membership Classifications); rule 1-3.5 (Retirement); rule 1-3.7 (Reinstatement to Membership); new rule 1-3 .10 (Appearances by Non Florida Lawyers); rule 1-7.3 (Membership Fees); subchapter 2-1 (Seal, Emblems, and Publicity Symbols); bylaw 2-1.2 (Publicity Symbol); bylaw 2-1.3 (Usage); bylaw 2-7.3 (Creation of Sections and Divisions); rule 3-5.1 (Types of Discipline; Generally); rule 3-7.1 (Confidentiality); rule 3-7.4 (Grievance Committee Procedures); rule 3-7.10 (Reinstatement and Readmission Procedures); rule 3-7.11 (General Rule of Procedure); rule 3-7.12 (Disciplinary Resignation from The Florida Bar); rule 4-1.5 (Fees for Legal Services); rule 4-8.3 (Reporting Professional Misconduct); rule 4-8.4 (Misconduct); rule 6-3.2 (Certification Committees); new rule 6-3.7 (Emeritus Specialist Status); rule 6-3.10 (Fees); rule 6-10.3 (Minimum Continuing Legal Education Standards); rule 6-12.1 (Basic Skills Course Requirement); rule 6-12.2 (Administration); rule 6-12.3 (Basic Skills Course Standards); new rule 6-12.3 (Requirement); new rule 6-12.4 *2 (Deferment and Exemption); rule 6-12.4 (Noncompliance and Sanctions); rule 10-4.1 (UPL Circuit Committees; Generally); rule 10-7.2 (Proceedings for Indirect Criminal Contempt); and rule 10-9.1 (Procedures for Issuance of Advisory Opinions on UPL).
After reviewing the proposals, we asked the Bar to file a supplemental petition addressing two matters of concern to the Court; that is, the adoption or amendment of rules 1-3.10 and 3-4.1. Specifically, we asked the Bar to address how the conduct of non-Florida lawyers engaged in mediation or arbitration within this state can be regulated if such lawyers are not required to be admitted to The Florida Bar under rule 1-3.10. See Amendments to Rules Regulating Fla. Bar, No. SC00-273 (Fla. order filed Sept. 1, 2000). We also asked the Bar to address the advisability of amending rule 3-7.12 to include a statement that disciplinary resignation is equivalent to disbarment. In its supplemental petition, the Bar proposed further amendment to rule 3-5.1 (Types of Discipline; Generally). After considering the Bar’s original and supplemental petitions as well as the comment filed concerning rule 1-3.10, we reach the following conclusions.
We adopt proposed new rule 1-3.10, Appearances by Non Florida Lawyers, which addresses practice by non-Florida lawyers. This rule contains provisions formerly found in subdivision (a) of rule 1-3.2, plus new provisions not previously contained in that rule. The new rule is similar to recently adopted Florida Rule of Judicial Administration 2.061, Foreign Attorneys. See Amendments to Fla. Rules of Jud. Admin., 780 So.2d 819 (Fla.2000). Consistent with our modifications to proposed rule 2:061, id at 826, we have modified rule 1-3.10 to remove references to the term “pro hac vice.” Subdivision (a)(2) of rule 1-3.10 prohibits “a general practice before Florida courts” which is considered “more than 3 appearances within a 365-day period in separate and unrelated representations.” Subdivisions (a)(3) and (a)(4) specifically prohibit appearances by inactive, suspended, or former members of The Florida Bar, or those sanctioned during prior appearance under the rule. Subdivision (b) prescribes the content of a verified motion filed under the rule. In response to the comment filed concerning this rule suggesting clarification of subdivision (b)(4), we have added language to that subdivision which clarifies that the only requests to be admitted to practice which must be disclosed in the verified motion are those made to a Florida court.
We reject the Bar’s recommendation to amend rule 3-4.1 at this time. Under this proposed amendment, non-Florida lawyers would be placed on the same footing as a member of The Florida Bar by being subject to the Rules Regulating the Florida Bar, including the Rules of Professional Conduct, for any unethical conduct that might occur during the course of the representation. Because it is not clear how the conduct of non-Florida lawyers who are appearing in mediation or arbitration in Florida without being admitted under the Rules Regulating the Florida Bar can be regulated by this Court, we are remanding this matter to the Bar for further consideration.
However, we adopt the Bar’s proposed amendments to rules 3-7.12 and 3-5.1(j) so as to include the following language:
Disciplinary resignation is the functional equivalent of disbarment in that both sanctions terminate the license and privilege to practice law and both require readmission to practice under the Rules of the Supreme Court Relating to Admissions to the Bar.
These amendments are in addition to other amendments to the above rules which were *3 recommended by the Bar in its original petition. The Bar’s recommendations from its original petition are reflected below in the appendix.
Accordingly, we amend the Rules Regulating the Florida Bar as provided in the appendix. New language is indicated by underscoring; deletions are indicated by struck-through type. The amendments shall take effect upon the filing of this opinion.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ„ concur.

APPENDIX

RULE 1-3.2 MEMBERSHIP CLASSIFICATIONS
(a) Members in Good Standing. Members of The Florida Bar in good standing shall mean only those persons licensed to practice law in Florida who have paid annual membership fees or dues for the current year and who are not retired, resigned, delinquent, inactive, or suspended members. A practicing attorney of another state, in good standing, who has professional business in a court of record of this state may, upon motion, be permitted to practice for the purpose of such business upon sueh-conditions as-the court dee-ms-appropriate-under the circumstances of the case..
(b) Conditionally Admitted Members. The Supreme Court of Florida may admit a person with a prior history of drug, alcohol, or psychological problems to membership in The Florida Bar and impose conditions of probation as the court deems appropriate upon that member. The period of probation shall be no longer than 3 5 years, or for such indefinite period of time as the court may deem appropriate by conditions in its order. The conditions may include, but not be limited to, participation in a rehabilitation program, periodic blood and urine analysis, periodic psychological examinations, or supervision by another member of The Florida Bar. The probation shall be monitored by The Florida Bar and the costs thereof shall be paid by the member on probation. A failure to observe the conditions of probation or a finding of probable cause as to conduct of the member committed during the period of probation may terminate the probation and subject the member to all available grievance procedures under the Rules of Discipline.
(c)Inactive Members. Inactive members of The Florida Bar shall mean only those members who have properly elected to be classified as inactive in the manner elsewhere provided.
Inactive members shall:
(1) pay annual membership fees as set forth in rule 1-7.3;
(2) be exempt from continuing legal education requirements;
(3) affirmatively represent their membership status as inactive members of The Florida Bar when any statement of Florida Bar membership is made;
(4) not hold themselves out as being able to practice law in Florida or render advice on matters of Florida law;
(5) not hold any position that requires the person to be a licensed Florida attorney;
(6) not be eligible for certification under the Florida certification plan;
(7) not vote in Florida Bar elections or be counted for purposes of apportionment of the board of governors;
(8) certify upon election of inactive status that they will comply with all applica *4 ble restrictions and limitations imposed on inactive members of The Florida Bar.
Failure of an inactive member to comply with all requirements thereof shall be cause for disciplinary action.
An inactive member may, at any time, apply for reinstatement to membership in good standing in the manner provided in rule 1-3.7.
RULE 1-3.5 RETIREMENT
Any member of The Florida Bar may retire from The Florida Bar upon petition or other written request to, and approval of, the board of governors. A retired member shall not practice law in this state except upon petition for reinstatement to and approval of the board of governors; the payment of all membership fees, costs, or other amounts owed to The Florida Bar; and the completion of all outstanding continuing legal education or basic skills course requirements. A retired member shall be entitled to receive such other privileges as the board of governors may authorize.
A retired member shall remain subject to disciplinary action for acts committed before the effective date of retirement. Acts committed after retirement may be considered in evaluating the member’s fitness to resume the practice of law in Florida as elsewhere stated in these Rules Regulating The Florida Bar.
RULE 1-3.7 REINSTATEMENT TO MEMBERSHIP
(a)Eligibility for Reinstatement. Members who have retired, been delinquent in the payment of membership fees, or been delinquent in continuing legal education requirements for a period of time not in excess of 5 years are eligible for reinstatement under this rule. Time shall be calculated from the day of the retirement, membership fees delinquency, or continuing legal education delinquency.
Inactive members may also seek reinstatement under this rule.
(b) Petitions Required. A member seeking reinstatement must file a petition with the board of governors executive director setting forth the reason for such resignation inactive status, retirement, or delinquency and showing good cause why the petition for reinstatement should be granted. The petition shall be on a form approved by the board of governors and the petitioner shall furnish such information on such form as the board of governors may require. The petition shall be accompanied by a nonrefundable reinstatement fee of $150 and payment of all ar-rearages unless adjusted by the executive director with concurrence of the executive committee for good cause shown. Inactive members shall not be required to pay the reinstatement fee. No member shall be reinstated if, from the petition or from investigation conducted, the petitioner is not of good moral character and morally fit to practice law or if the member is delinquent in compliance with the continuing legal education or basic skills course requirements.
If the executive director is in doubt as to approval of a petition the executive director may refer the petition to the board of governors for its action. Action of the executive director or board of governors denying a petition for reinstatement may be reviewed upon petition to the Supreme Court of Florida.
(c) Members W-he- Have Retired or Been Delinquent for- 3 Years or Less, Members who have retired or-been delinquent for 3 years or less may be reinstated by the executive director or the executive director may refer their petition to the board of-gevernor-ST
*5 (d c) Members Who Have Retired or Been Delinquent for Less Than 5 Years, But More Than 3 Years. Members who have retired or been delinquent for less than 5 years, but more than 3 years, shall have completed 10 hours of continuing legal education courses for each year or portion thereof that the member had retired or was deemed delinquent. -Final-action of-the-board of governors denying a petition-.for reinstatement may -be-reviewed upon petition-to the Supreme Court of Florida.
(e d) Members Who Have Retired or Been Delinquent for 5 Years or More. Members who have retired or have been deemed delinquent for a period of 5 years or longer shall not be reinstated except under this rule and must be readmitted upon application to and approval by the Florida Board of Bar Examiners.
(f e) Members Delinquent 60 Days or Less. Reinstatement from membership fees delinquency accomplished within 60 days from the date of delinquency shall be deemed to relate back to the date before the delinquency. Any member reinstated within the 60-day period shall not be subject to disciplinary sanction for practicing law in Florida during that time.
(g f) Inactive Members. Inactive members may be reinstated to membership in good standing by the board of governors by petition filed with the executive director, in the form and as provided in (b) above, except:
(1)If the member has been inactive for greater than 5 years, but has been authorized to and either actively practiced law in another jurisdiction for the entire period of time or held a position that requires a license as an attorney, the member shall be required to complete the Florida Law Update continuing legal education course as part of continuing legal education requirements.
(2) If the member has been inactive for greater than 5 years and has been authorized to but has not actively practiced law in another jurisdiction or held a position that requires a license as an attorney for the entire period of time, the member shall be required to complete the basic skills course requirement and the 30-hour continuing legal education requirement.
(3) An inactive member shall not be eligible for reinstatement until all applicable continuing legal education requirements have been completed and the remaining portion of membership fees for members in good standing for the current fiscal year have been paid.
RULE 1-3.10 APPEARANCES BY NON-FLORIDA LAWYERS
(a) Non-Florida Lawyers With Professional Business in Florida. A practicing lawyer of another state, in good standing, may, upon association of a member of The Florida Bar, in good standing, and verified motion be permitted to practice upon such conditions as the court deems appropriate under the circumstances of the case. Such lawyer shall comply with the applicable portions of this rule and the Florida Rules of Judicial Administration.
(1) Application of Rules Regulating The Florida Bar. Lawyers permitted to appear by this rule shall be subject to these Rules Regulating The Florida Bar while engaged in the permitted representation.
(2) General Practice Prohibited. Non-Florida lawyers shall not be permitted to engage in a general practice before Florida courts. For purposes of this rule more than 3 appearances within a 365-day period in separate and unrelated representations shall be presumed to be a “general *6 practice,” provided, however, that the court shall have discretion to allow other appearances upon a showing; that the appearances are not a “general practice” or that denial will work a substantial hardship on the client.
(3) Effect of Professional Discipline or Contempt. Non-Florida lawyers who have been disciplined or held in contempt by-reason of misconduct committed while engaged in representation that is permitted by this rule shall thereafter be denied admission under this rule and the applicable provisions of the Florida Rules of Judicial Administration.
(4) Inactive, Suspended, and Former Members of The Florida Bar Prohibited. This rule and the applicable portions of the Florida Rules of Judicial Administration shall not be construed to permit the admission of inactive, suspended, and former members of The Florida Bar to courts of record in this state. Inactive, suspended, and former members of The Florida Bar who seek admission under this rule and the applicable provisions of the Florida Rules of Judicial Administration shall disclose current Florida Bar membership status to the courts. Failure to make such disclosure shall serve as a basis for denial of leave to appear and a bar to future appearances in Florida courts of record under this rule and the applicable portions of the Florida Rules of Judicial Administration.
(b) Content of Verified Motion for Leave to Appear. Any verified motion filed under this rule or the applicable provisions of the Florida Rules of Judicial Administration shall include:
(1)a statement of the current Florida Bar membership status of the lawyer, if any;
(2) a statement indicating' the lawyer is currently a member in good standing of a .jurisdiction other than Florida;
(3) a statement indicating the date the legal representation at issue commenced and the party(ies) represented;
(4) a statement identifying, by date, case name, and case number, all other matters in which temporary admission has been sought in the state of Florida in the prior 5 years and whether such admission has been granted or denied; ■
(5) a statement that all provisions of this rule and the applicable provisions of the Florida Rules of Judicial Administration have been read and that the motion for leave to appear is filed in compliance therewith;
(6) the name, record bar address, and membership status of the member(s) of The Florida Bar associated for purposes of the representation; and
(7) a certificate indicating service of the verified motion upon all counsel of record in the matter in which leave to appear is sought.
RULE 1-7.3 MEMBERSHIP FEES
(a) Membership Fees Requirement. On or before July 1 of each year, every member of The Florida Bar, except those members who have retired, resigned, been disbarred, or been classified as inactive members pursuant to rule 3-7.13, shall pay annual membership fees to The Florida Bar in the amount set by the budget, provided that the board of governors shall not fix the membership fees at more than $190 per annum. At the time of the payment of membership fees every member of The Florida Bar shall file with the executive director a statement setting forth any information that may be required by the board of governors.
*7 Membership fees tendered to The Florida Bar shall not be accepted from any member who is delinquent in the payment of costs or restitution imposed against the member in a disciplinary proceeding. Costs shall be deemed delinquent unless paid within 30 days after the disciplinary decision becomes final unless such time is extended by the board of governors for good cause shown. Restitution shall be deemed delinquent unless accomplished in the manner and by the date provided in the disciplinary order or agreement.
(b) Prorated Membership Fees. Persons admitted to The Florida Bar subsequent to July 1 of any fiscal year shall pay the annual membership fees for that fiscal year prorated on the basis of the number of full calendar months of the fiscal year remaining at the time of their admission.
Failure to pay prorated membership fees shall result in the amount of such prorated membership fees being added to the next annual membership fees billing to the member without penalty. The combined prorated and annual membership fees payment must thereafter be received by The Florida Bar on or before August 15, unless the member elects to pay by installment under this rule.
(c) Installment Payment of Membership Fees. Members of The Florida Bar may elect to pay annual membership fees in 3 equal installments as follows:
(1) in the second and third year of their admission to The Florida Bar; or
(2) if the member is employed by a federal, state, or local government in a non-elected position that requires the individual to maintain membership in good standing within The Florida Bar.
A member’s notice of election to pay membership fees in installments under this rule and the first installment payment thereunder must be postmarked no later than August 15. The second and third installment payments must be postmarked no later than November 1 and February 1, respectively.
Second and/or third installment payments postmarked after their respective due date(s) shall be subject to a one-time late charge of $25 50 per fiscal year, which shall accompany the final payment unless adjusted by the executive director with concurrence of the executive committee for good cause shown.
The executive director shall send written notice by registered or certified mail to the last official bar address of each member whose membership fees and late fees have not been paid under this rule by February 1. Upon failure to pay membership fees and any late charges under this rule by March 15, unless adjusted by the executive director with concurrence of the executive committee for good cause shown, the member shall be a delinquent member.
Each member who elects to pay annual membership fees in installments under this rule may be charged an additional administrative fee to defray the costs of this activity as set by the Board of Governors.
(d)Election of Inactive Membership. A member in good standing may elect by August 15 of a fiscal year to be classified as an inactive member. Such election shall be made only by indication of such choice on the annual membership fees statement and payment of the prescribed annual membership fees. Failure to make the initial election by August 15 shall constitute a waiver of the member’s right to the election until the next fiscal year. Once a member has properly elected to be classified as an inactive member, such classification shall continue from fiscal year to fiscal year until such time as the member is reinstated as a member in good standing as elsewhere provided in these rules. The *8 election of inactive status shall be subject to the restrictions and limitations elsewhere provided.
Membership fees for inactive members shall be set by the board of governors in an amount not to exceed $140 per annum.
(e) Late Payment of Membership Fees. Payment of annual membership fees must be postmarked no later than August 15. Membership fees payments postmarked after August 15 shall be accompanied by a late charge of $25 50 unless adjusted by the executive director with concurrence of the executive committee for good cause shown. The executive director shall send written notice by registered or certified mail to the last official bar address of each member whose membership fees have not been paid by August 15. Upon failure to pay membership fees and any late charges by September 80, unless adjusted by the executive director with concurrence of the executive committee for good cause shown, the member shall be a delinquent member.
2-1. SEAL, EMBLEMS, AND P-UBLICI-TY SYMBOLS
BYLAW 2-1,2 PUBLICITY-SYMBOL
The publicity symbol for The Florida Bar-to be placed on-publicity of The Florida-Bar — shall'Consist of an outline of -the F-lorida-map, scales of justicerbook, and gavek — “The Florida-Bar” shall be set in circular fashion around-the symbol.
BYLAW 2-1.82 USAGE
The usages of the seal, emblems, and publicity or other symbols of The Florida Bar shall be determined by the board of governors.
BYLAW 2-7.3 CREATION OF SECTIONS AND DIVISIONS
Sections and divisions may be created or abolished by the board of governors as deemed necessary or desirable. The following sections of The Florida Bar have been created by the board of governors:
(a) Administrative Law Section;
(b) Appellate Practice asd — Advocacy-Section;
(c) Business Law Section;
(d) City, County and Local Government Law Section;
(e) Criminal Law Section;
(0 Elder Law Section;
(g) Entertainment, Arts, and Sports Law Section;
(h) Environmental and Land Use Law Section;
(i) Equal Opportunities Law Section;
(i j ) Family Law Section;
(j k) General Practice, Solo and Small Firm Section;
(k l) Government Lawyer Section;
(im) Health Law Section;
(*» n) International Law Section;
(» o ) Labor and Employment Law Section;
p) Practice Management and Development Section;
(p g) Public Interest Law Section;
(g r) Real Property, Probate, and Trust Law Section;
(rs) Tax Section;
(s t) Trial Lawyers Section; and
(tu) Workers’ Compensation Section.
The following divisions of The Florida Bar have been created by the board of governors:
*9 (a) Out-of-State Practitioners Division; and
(b) Young Lawyers Division.
BYLAW 2-9.11 ASSISTANCE TO MEMBERS SUFFERING FROM IMPAIRMENT RELATED TO CHEMICAL DEPENDENCY OR PSYCHOLOGICAL PROBLEMS
The Florida Bar shall create or fund a program for the identification of its members who suffer from impairment related to chemical dependency or psychological problems which that affect their professional performance or practice of law, and the assistance of those members in overcoming such dependency or problems.
RULE 3-5.1 GENERALLY
A judgment entered, finding a member of The Florida Bar guilty of misconduct, shall include one or more of the following disciplinary measures:
(a) Admonishments. A Supreme Court of Florida order finding minor misconduct and adjudging an admonishment may direct the respondent to appear before the Supreme Court of Florida, the board of governors, grievance committee, or the referee for administration of the admonishment. A grievance committee report and finding of minor misconduct or the board of governors, upon review of such report, may direct the respondent to appeal1 before the board of governors or the grievance committee for administration of the admonishment. A memorandum of administration of an admonishment shall thereafter be made a part of the record of the proceeding.
(b) Minor Misconduct. Minor misconduct is the only type of misconduct for which an admonishment is an appropriate disciplinary sanction.
(1) Criteria. In the absence of unusual circumstances misconduct shall not be regarded as minor if any of the following conditions exist:
(A) the misconduct involves misappropriation of a client’s funds or property;
(B) the misconduct resulted in or is likely to result in actual prejudice (loss of money, legal rights, or valuable property rights) to a client or other person;
(C) the respondent has been publicly disciplined in the past 3 years;
(D) the misconduct involved is of the same nature as misconduct for which the respondent has been disciplined in the past 5 years;
(E) the misconduct includes dishonesty, misrepresentation, deceit, or fraud on the part of the respondent; or
(F) the misconduct constitutes the commission of a felony under applicable law.
(2) Discretion of Grievance Committee. Despite the presence of 1 or more of the criteria described in subdivision (1) above, a grievance committee may recommend an admonishment for minor misconduct or diversion to a practice and professionalism enhancement program when unusual circumstances are present. When the grievance committee recommends an admonishment for minor misconduct or diversion to a practice and professionalism enhancement program under such circumstances, its report shall contain a detailed expían? tion of the circumstances giving rise to 11 committee’s recommendation.
(3) Recommendation of Minor Misconduct. If a grievance committee finds the respondent guilty of minor misconduct or if the respondent shall admit guilt of minor misconduct and the committee concurs, the grievance committee shall file its report recommending an admonishment, recom *10 mending the manner of administration, and for the taxing of costs against the respondent. The report recommending an admonishment shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the report is not referred to the disciplinary review committee by the designated reviewer (as provided in rule 3 — 7.5(b)), the report shall then be served on the respondent by bar counsel. The report and finding of minor misconduct shall become final unless rejected by the respondent within 15 days after service of the report. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor misconduct to be prepared by bar counsel as in the case of a finding of probable cause. If the report of minor misconduct is not rejected by the respondent, notice of the finding of minor misconduct shall be given, in writing, to the complainant.
(4) Rejection of Minor Misconduct Reports. The rejection by the board of governors of a grievance committee report of minor misconduct, without dismissal of the case, or remand to the grievance committee, shall be deemed a finding of probable cause. The rejection of such l-eport by a respondent shall be deemed a finding of probable cause for minor misconduct. Upon trial befoi-e a referee following rejection by a respondent of a report of minor misconduct, the referee may recommend any discipline authorized under these rules.
(5) Admission of Minor Misconduct. Within 15 days after a finding of probable cause by a grievance committee, a respondent may tender a written admission of minor misconduct to bar counsel or the grievance committee. An admission of minor misconduct may be conditioned upon acceptance by the grievance committee, but the respondent may not condition the admission of minor misconduct upon the method of administration of the admonishment or upon nonpayment of costs incurred in the proceedings. Such an admission may be tendered after a finding of probable cause (but before the filing of a complaint) only if such an admission has not been previously tendered. If the admission is tendered after a finding of probable cause, the gi'ievance committee may consider such admission without further evidentiary hearing and may either reject the admission, thereby affirming its prior action, or accept the admission and issue its repoi*t of minor misconduct. If a respondent’s admission is accepted by the gxievance committee, the respondent may not thereafter reject a report of the committee recommending an admonishment for minor misconduct. If the admission of minor misconduct is rejected, such admission shall not be considered or used against the respondent in subsequent proceedings.
(c) Probation. The respondent may be placed on probation for a stated period of time of not less than 6 months nor more than 3 years or for an indefinite period determined by conditions stated in the order. The judgment shall state the conditions of the probation, which may include but are not limited to the following:
(1) completion of a practice and professionalism enhancement program as provided elsewhere in these rules;
(2) supervision of all or part of the respondent’s woi’k by a member of The Florida Bar;
(3) the making of reports to a designated agency;
(4) the satisfactory completion of a course of study or a paper on legal ethics *11 approved by the Supreme Court of Florida;
(5) such supervision over fees and trust accounts as the court may direcL; or
(6) restrictions on the ability to advertise legal services, either in type of advertisement or a general prohibition for a stated period of time, in cases in which rules regulating advertising have been violated or the legal representation in which the misconduct occurred was obtained by advertising.
The respondent will also reimburse the bar for the costs of supervision. Failure to observe the conditions of the probation or a finding of probable cause as to conduct of the respondent committed during the period of probation shall terminate the probation. In such event, even though such finding of probable cause shall be made after the expiration of the period of probation, the judgment shall be reconsidered and an appropriate judgment shall be entered. On termination of probation for failure to observe the conditions of probation or on a finding of probable cause for misconduct committed during the period of probation, the attorney may be punished for contempt or suspended from the practice of law on petition by The Florida Bar, and any such suspension shall continue until the respondent may be reinstated to the practice of law as provided elsewhere in these rules.
(d) Public Reprimand. A public reprimand shall be administered in the manner prescribed in the judgment but all such reprimands shall be reported in the Southern Reporter. Due notice shall be given to the respondent of any proceeding set to administer the reprimand. The respondent shall appear personally before the Supreme Court of Florida, the board of governors, any judge designated to administer the reprimand, or the referee, if required, and such appearance shall be made a part of the record of the proceeding.
(e) Suspension. The respondent may be suspended from the practice of law for a definite period of time or an indefinite period thereafter to be determined by the conditions imposed by the judgment. During such suspension the respondent shall continue to be a member of The Florida Bar but without the privilege of practicing, and, upon the expiration of the suspension period and the satisfaction of all conditions accompanying the suspension, the respondent shall become eligible to all of the privileges of members in The Florida Bar. A suspension of 90 days or less shall not require proof of rehabilitation or passage of the Florida bar examination. A suspension of more than 90 days shall require proof of rehabilitation and may require passage of all or part of the Florida bar examination. No suspension shall be ordered for a specific period of time in excess of 3 years.
(f) Disbarment. A judgment of disbarment terminates the respondent’s status as a member of the bar. Permanent disbarment shall preclude readmission. A former member who has not been permanently disbarred may only be admitted again upon full compliance with the rules and regulations governing admission to the bar. Except as might be otherwise provided in these rules, no application for readmission may be tendered within 5 years after the date of disbarment or such longer period as the court might determine in the disbarment order and thereafter until all court-ordered restitution and outstanding disciplinary costs have been paid.
Disbarment is the presumed sanction for lawyers found guilty of theft from a lawyer’s trust account or special trust funds received or disbursed by a lawyer as guardian, personal representative, receiv *12 er, or in a similar capacity such as trustee under a specific trust document. A respondent found guilty of such theft shall have the opportunity to offer competent, substantial evidence to rebut the presumption that disbarment is appropriate.
(g) Notice to Clients. Upon service on the respondent of an order of disbarment, suspension, disciplinary resignation for cause, emergency suspension, emergency probation, or placement on the inactive list for incapacity not related to misconduct, the respondent shall, unless this requirement is waived or modified in the court’s order, forthwith furnish a copy of the order to¿
(1) all of the respondent’s clients with matters pending in the respondent’s practice,
(2) all opposing counsel or co-counsel in the matters listed in (1), above; and
(3) all courts, tribunals, or adjudicative agencies before which the respondent is counsel of record.
and-wWithin 30 days after service of the order the respondent shall furnish staff bar counsel of The Florida Bar with a sworn affidavit listing the names and addresses of all clients persons and entities who that have been furnished copies of the order.
(h) Forfeiture of Fees. An order of the Supreme Court of Florida or a report of minor misconduct adjudicating a respondent guilty of entering into, charging, or collecting a fee prohibited by the Rules Regulating The Florida Bar may order the respondent to forfeit the fee or any part thereof. In the case of a clearly excessive fee, the excessive amount of the fee may be ordered returned to the client, and a fee otherwise prohibited by the Rules Regulating The Florida Bar may be ordered forfeited to The Florida Bar Clients’ Security Fund and disbursed in accordance with its rules and regulations.
(i) Restitution. In addition to any of the foregoing disciplinary sanctions and any disciplinary sanctions authorized elsewhere in these rules, the respondent may be ordered or agree to pay restitution to a complainant or other person if the disciplinary order finds that the respondent has received a clearly excessive, illegal, or prohibited fee or that the respondent has converted trust funds or property. In such instances the amount of restitution shall be specifically set forth in the disciplinary order or agreement and shall not exceed the amount by which a fee is clearly excessive, in the case of a prohibited or illegal fee shall not. exceed the amount of such fee, or in the case of conversion shall not exceed the amount of the conversion established in disciplinary proceedings. The disciplinary order or agreement shall also state to whom restitution shall be made and the date by which it shall be completed. Failure to comply with the order or agreement shall not preclude further proceedings under these rules.
(j) Disciplinary Resignation. A respondent may be allowed to resign membership in The Florida Bar in lieu of defending against allegations of disciplinary violations. If accepted by the Supreme Court of Florida, a disciplinary resignation terminates the respondent’s status as a member of the bar. A former member whose disciplinary resignation has been accepted may only be admitted again upon full compliance with the rules and regulations governing admission to the bar. Disciplinary resignation is the functional equivalent of disbarment in that both sanctions terminate the license and privilege to practice law and both require readmission to practice under the Rules of the Supreme Court Relating to Admissions to the Bar. Except as otherwise provided in these *13 rules, no application for admission may be tendered within 3 years after the date of the order of the Supreme Court of Florida that accepted the disciplinary resignation or such additional time as the respondent may have stated in the petition for disciplinary resignation. A petition that states that disciplinary resignation is without leave to apply for readmission shall preclude readmission to the bar.
RULE 3-7.1 CONFIDENTIALITY
(a) Scope of Confidentiality. All matters including files, preliminary investigation reports, interoffice memoranda, records of investigations, and the records in trials and other proceedings under these rules, except those disciplinary matters conducted in circuit courts, are property of The Florida Bar. All of those matters shall be confidential and shall not be disclosed except as provided in these rules. When disclosure is permitted under these rules, it shall be limited to information concerning the status of the proceedings and any information that is part of the public record as defined in these rules.
(b) Public Record. The public record shall consist of the record before a grievance committee, the record before a referee, the record before the Supreme Court of Florida, and any reports, correspondence, papers, recordings, and/or transcripts of hearings furnished to, served on, or received from the respondent or the complainant.
(c) Circuit Court Proceedings. Proceedings under rule 3-3.5 shall be public information. Contempt proceedings authorized elsewhere in these rules shall be public information even though the underlying disciplinary matter is confidential as defined in these rules.
(d) Limitations on Disclosure. Any material provided to The Florida Bar that is confidential under applicable law shall remain confidential and shall not be disclosed except as authorized by the applicable law. If this type of material is made a part of the public record, that portion of the public record may be sealed by the grievance committee chair, the referee, or the Supreme Court of Florida.
(e) Disclosure of Information. Unless otherwise ordered by this court or the referee in proceedings under this rule, nothing in these rules shall prohibit the complainant, respondent, or any witness from disclosing the existence of proceedings under these rules or from disclosing any documents or correspondence served on or provided to those persons.
(f) Response to Inquiry. Representatives of The Florida Bar authorized by the board of governors shall respond to specific inquiries concerning matters that are in the public domain, but otherwise confidential under the rules, by acknowledging the status of the proceedings.
(g) Notice to Law Firms. When a disciplinary file is opened the respondent shall disclose to the respondent’s current law firm and, if different, the respondent’s law firm at the time of the act or acts giving rise to the complaint, the fact that a disciplinary file has been opened. Disclosure shall be in writing and in the following form:
A complaint of unethical conduct against me has been filed with The Florida Bar. The nature of the allegations are _This notice is provided pursuant to rule 3-7.1(g) of the Rules Regulating The Florida Bar.
The notice shall be provided within 15 days of notice that a disciplinary file has been opened and a copy of the above notice shall be served on The Florida Bar.
*14 (h) Pending Investigations. Disciplinary matters pending at the initial investigatory and grievance committee levels shall be treated as confidential by The Florida Bar, except as provided in rule 3-7.1(f).
(i) Minor Misconduct Cases. Any case in which a finding of minor misconduct has been entered, by action of the grievance committee or board, shall become public information.
(j) Probable Cause Cases. Any disciplinary case in which a finding of probable cause for further disciplinary proceedings has been entered shall be public information. For purposes of this subdivision a finding of probable cause shall be deemed to have been made in those cases authorized by rule 3-3.2(a), for the filing of a formal complaint without the prior necessity of a finding of probable cause.
(k) No Probable Cause Cases. Any disciplinary case that has been concluded by a finding of no probable cause for further disciplinary proceedings shall become public information.
(il) Production of Disciplinary Records Pursuant to Subpoena. The Florida Bar, pursuant to a valid subpoena issued by a regulatory agency, may provide any documents that are a portion of the public record, even if the disciplinary proceeding is confidential under these rules. The Florida Bar may charge a reasonable fee for identification of and photocopying the documents.
(m) Notice to Judges. Any judge of a court of record upon inquiry of the judge shall be advised and, absent an inquiry, may be advised as to the status of a confidential disciplinary case and may be provided with a copy of documents in the file that would be part of the public record if the case was not confidential. The judge shall maintain the confidentiality of the records and shall not otherwise disclose the status of the case.
(n) Evidence of Crime. The confidential nature of these proceedings shall not preclude the giving of any information or testimony to authorities authorized to investigate alleged criminal activity.
(o) Alcohol — and Drug Chemical Dependency and Psychological Treatment. That an attorney has voluntarily sought, received, or accepted treatment for aleo-holism or alcohol or drug abuse chemical dependency or psychological problems shall be confidential and shall not be admitted as evidence in disciplinary proceedings under these rules unless agreed to by the attorney who sought the treatment.
For purposes of this subdivision, an attorney shall be deemed to have voluntarily sought, received, or accepted treatment for alcoholism or alcohol or drug-abuse chemical dependency or psychological problems if the attorney was not under compulsion of law or rule to do so, or if the treatment is not a part of conditional admission to The Florida Bar or of a disciplinary sanction imposed under these rules.
It is the purpose of this subdivision to encourage attorneys to voluntarily seek advice, counsel, and treatment available to attorneys, without fear that the fact it is sought or rendered will or might cause embarrassment in any future disciplinary matter.
(p) Response to False or Misleading Statements. If public statements that are false or misleading are made about any otherwise confidential disciplinary case, The Florida Bar may disclose all information necessary to correct such false or misleading statements.
(q) Disclosure by Waiver of Respondent. Upon written waiver executed by a respondent, The Florida Bar may disclose *15 the status of otherwise confidential disciplinary proceedings and provide copies of the public record to:
(1) the Florida Board of Bar Examiners or the comparable body in other jurisdictions for the purpose of evaluating the character and fitness of an applicant for admission to practice law in that jurisdiction; or
(2) Florida judicial nominating commissions or the comparable body in other jurisdictions for the purpose of evaluating the character and fitness of a candidate for judicial office; or
(3) the governor of the State of Florida for the purpose of evaluating the character and fitness of a nominee to judicial office.
RULE 3-7.4 GRIEVANCE COMMITTEE PROCEDURES
(a) Notice of Hearing. When notice of a grievance committee hearing is sent to the respondent, such notice shall be accompanied by a list of the grievance committee members.
(b) Complaint Filed With Grievance Committee. A complaint received by a committee direct from a complainant shall be reported to the appropriate branch staff counsel for docketing and assignment of a case number, unless the committee resolves the complaint within 10 days after receipt of the complaint. A written report to bar counsel shall include the following information: complainant’s name and address, respondent’s name, date complaint received by committee, copy of complaint letter or summary of the oral complaint made, and the name of the committee member assigned to the investigation. Formal investigation by a grievance committee may proceed after the matter has been referred to bar counsel for docketing.
(c) Investigation. A grievance committee is required to consider all charges of misconduct forwarded to the committee by counsel whether based upon a written complaint or not.
(d) Conduct of Proceedings. The proceedings of grievance committees may be informal in nature and the committees shall not be bound by the rules of evidence.
(e) No Delay for Civil or Criminal Proceedings. An investigation shall not be deferred or suspended without the approval of the board even though the respondent is made a party to civil litigation or is a defendant or is acquitted in a criminal action, notwithstanding that either of such proceedings involves the subject matter of the investigation.
(f) Counsel and Investigators. Upon request of a grievance committee, staff counsel may appoint a bar counsel or an investigator to assist the committee in an investigation. Bar counsel shall assist each grievance committee in carrying out its investigative and administrative duties and shall prepare status reports for the committee, notify complainants and respondents of committee actions as appropriate, and prepare all reports reflecting committee findings of probable cause, no probable cause, recommended discipline for minor misconduct, and letters of advice after no probable cause findings.
(g) Quorum, Panels, and Vote.
(1) Quomm. Three members of the committee, 2 of whom must be lawyers, shall constitute a quorum.
(2) Panels. The grievance committee may be divided into panels of not fewer than 3 members, 2 of whom must be lawyers., Division of the grievance committee into panels shall only be upon concurrence of the designated reviewer and the chair of the grievance committee. The 3-member *16 panel shall elect 1 of its lawyer members to preside over the panel’s actions. If the chair or vice-chair is a member of a 3-member panel, the chair or vice-chair shall be the presiding officer.
(3) Vote. All findings of probable cause and recommendations of guilt of minor misconduct shall be made by affirmative vote of a majority of the committee members present, which majority must number at least 2 members. There shall be no required minimum number of lawyer members voting in order to satisfy the requirements of this rule. The number of committee members voting for or against the committee report shall be reflected in the transc-ript recorded. Minority reports may be filed. A lawyer grievance committee member may not vote on the disposition of any matter in which that member served as the investigating member of the committee.
(h) Rights and Responsibilities of the Respondent. The respondent may be required to testify and to produce evidence as any other witness unless the respondent claims a privilege or right properly available to the respondent under applicable federal or state law. The respondent may be accompanied by counsel. At a reasonable time before any finding of probable cause or minor misconduct is made, the respondent shall be advised of the conduct that is being investigated and the rules that may have been violated. The respondent shall be provided with all materials considered by the committee and shall be given an opportunity to make a written statement, sworn or unsworn, explaining, refuting, or admitting the alleged misconduct.
(i) Rights of the Complaining Witness. The complaining witness is not a party to the disciplinary proceeding. Unless it is found to be impractical by the chair of the grievance committee due to unreasonable delay or other good cause, the complainant shall be granted the right to be present at any grievance committee hearing when the respondent is present before the committee. Neither unwillingness nor neglect of the complaining witness to cooperate, nor settlement, compromise, or restitution, will excuse the completion of an investigation. The complaining witness shall have no right to appeal.
(j) Finding of No Probable Cause.
(1) Authority of Grievance Committee. A grievance committee may terminate an investigation by finding that no probable cause exists to believe that the respondent has violated these rules. The committee may issue a letter of advice to the respondent in connection with the finding of no probable cause.
(2) Notice of Committee Action. Bar counsel shall notify the respondent and complainant of the action of the committee.
(3) Effect of No Probable Cause Finding. A finding of no probable cause by a grievance committee shall not preclude the reopening of the case and further proceedings therein.
(4) Disposition of Committee Files. Upon the termination of the grievance committee’s investigation, the committee’s file shall be forwarded to bar counsel for disposition in accord with established bar policy.
(k) Letter Reports in No Probable Cause Cases. Upon a finding of no probable cause, bar counsel will submit a letter report of the no probable cause finding to the complainant, presiding member, investigating member, and the respondent, including any documentation deemed appropriate by bar counsel and explaining why the complaint did not warrant further proceedings. Letters of advice issued by a *17 grievance committee in connection with findings of no probable cause shall be signed by the presiding member of the committee. Letter reports and letters of advice shall not constitute a disciplinary sanction.
(Z) Preparation, Forwarding, and Review of Grievance Committee Complaints. If a grievance committee finds probable cause, the bar counsel assigned to the committee shall promptly prepare a record of its investigation and a formal complaint. The record before the committee shall consist of all reports, correspondence, papers, and/or recordings furnished to or received from the respondent, and the transcript of grievance committee meetings or hearings, if the proceedings were attended by a court reporter; provided, however, that the committee may retire into private session to debate the issues involved and to reach a decision as to the action to be taken. The formal complaint shall be signed by the member of the committee who presided in the proceeding. The formal complaint shall be in such form as shall be prescribed by the board. If the presiding member of the grievance committee disagrees with the form of the complaint, the presiding member may direct bar counsel to make changes accordingly. If bar counsel does not agree with the changes, the matter shall be referred to the designated reviewer of the committee for appropriate action. When a formal complaint by a grievance committee is not referred to the designated reviewer, or returned to the grievance committee for further action, the formal complaint shall be promptly forwarded to and reviewed by bar headquarters staff counsel who shall file the formal complaint, and furnish a copy of the formal complaint to the respondent. A copy of the record shall be made available to the respondent at the respondent’s expense.
(m) Recommendation of Admonishment for Minor Misconduct. If the committee recommends an admonishment for minor misconduct, the grievance committee report shall be drafted by bar counsel and signed by the presiding member. The committee report need only include: (1) the committee’s recommendations regarding the admonishment, designation withdrawal revocation of certification, and conditions of redesignation recertification; (2) the committee’s recommendation as to the method of administration of the admonishment; (3) a summary of any additional charges that will be dismissed if the admonishment is approved; (4) any comment on mitigating, aggravating, or evidentiary matters that the committee believes will be helpful to the board in passing upon the admonishment recommendation; and (5) an admission of minor misconduct signed by the respondent, if the respondent has admitted guilt to minor misconduct. No record need be submitted with such a report. After the presiding member signs the grievance committee report, the report shall be returned to bar counsel. The report recommending an admonishment shall be forwarded to staff counsel and the designated reviewer for review. If staff counsel does not return the report to the grievance committee to remedy a defect therein, or if the designated reviewer does not present the same to the disciplinary review committee for action by the board, the report shall then be served on the respondent by bar counsel.
(n) Rejection of Admonishment. The order of admonishment shall become final unless rejected by the respondent within 15 days after service upon the respondent. If rejected by the respondent, the report shall be referred to bar counsel and referee for trial on complaint of minor miscon *18 duct to be prepared by bar counsel as in the case of a finding of probable cause.
(o) Recommendation of Diversion to Remedial Programs. A grievance committee may recommend, as an alternative to issuing a finding of minor misconduct or no probable cause with a letter of advice, diversion of the disciplinary case to a practice and professionalism enhancement program as provided elsewhere in these rules. A respondent may reject the diversion recommendation in the same manner as provided in the rules applicable to rejection of findings of minor misconduct. In the event that a respondent rejects a recommendation of diversion, the matter shall be returned to the committee for further proceedings.
(p) Appointment of Bar Counsel. When a grievance committee formal complaint is not referred to the disciplinary review committee, or returned to the grievance committee, staff counsel of The Florida Bar headquarters in Tallahassee may appoint bar counsel unless bar counsel has been appointed, sign the complaint and file the same in the Supreme Court of Florida, serve a copy on the respondent, and request the Supreme Court of Florida to assign a referee to try the cause. If probable cause is found by the board, bar counsel will prepare the formal complaint.
RULE 3-7.10 REINSTATEMENT AND READMISSION PROCEDURES
(a) Readmission. — A—former member who has -been-disbarred or whose petition for disciplinary resignation has been accepted, pursuant to rule-3-7.12, may be admitted again only upon full compliance with the rules and regulations governing admission to the bar. — Except as might be otherwise provided in these-r-ules, no-app-l-i-cation for ■ admission- -may- be tendered within^ 5-years after the date of disbarment or such-longer-period as the court might determine in-the disbarment order.
(b a) Reinstatement; Applicability. An attorney who has been suspended or placed on the inactive list for incapacity not related to misconduct may be reinstated to membership in The Florida Bar pursuant to this rule. The proceedings under this rule are not applicable to suspension for nonpayment of membership fees.
(e b) Petitions; Form and Contents.
(1) Filing. The original petition for reinstatement and 1 copy thereof shall be in writing, verified by the petitioner, and addressed to and filed with the Supreme Court of Florida. A copy shall be served on Staff Counsel, The Florida Bar, 650 Apalachee Parkway, in Tallahassee, Florida 32399-2300.
(2) Form and Exhibits. The petition shall be in such form and shall be accompanied by such exhibits as provided for elsewhere in this rule 3-7-4-0(n)(l) and (2). The information required concerning the petitioner may include any or all of the following matters in addition to such other matters as may be reasonably required to determine the fitness of the petitioner to resume the practice of law: criminal and civil judgments, disciplinary judgments, copies of income tax returns together with consents to secure original returns, occupation during suspension and information in connection therewith, financial statements, and statement of restitution of funds that were the subject matter of disciplinary proceedings. In cases seeking reinstatement from incapacity, the petition shall also include copies of all pleadings in the matter leading to placement on the inactive list and all such other matters as may be reasonably required to demonstrate the character and fitness of the petitioner to resume the practice of law.
*19 (4 c) Deposit for Cost. The petition shall be accompanied by proof of a deposit paid to The Florida Bar in such amount as the board of governors shall prescribe to ensure payment of reasonable costs of the proceedings, as provided elsewhere in this rule g — 7-.-10(o).
(e d) Reference of Petition For Hearing. The chief justice shall refer the petition for reinstatement to a referee for hearing; provided, however, that no such reference shall be made until evidence is submitted showing that all costs assessed against the petitioner in all disciplinary or incapacity proceedings have been paid and restitution has been made.
(f e) Attorney for the Bar. When a petition for reinstatement is filed, the board of governors or staff counsel, if authorized by the board of governors, may appoint, from the members in good standing of The Florida Bar designated by the staff counsel to serve as bar counsel, 1 or more attorneys to represent The Florida Bar in the proceeding. The duties of such attorneys shall be to appear at the hearings and to prepare and present to the referee evidence that, in the opinion of the referee or such attorneys, should be considered in passing upon the petition.
(g f) Determination of Fitness by Referee Hearing. The referee to whom the petition for reinstatement is referred shall conduct the hearing as a trial, in the same manner, to the extent practical, as proceedings are-conducted under the rule conceming — trials provided elsewhere in these rules. The matter to decide shall be the fitness of the petitioner to resume the practice of law. In determining the fitness of the petitioner to resume the practice of law, the referee shall consider whether the petitioner has engaged in any disqualifying conduct, the character and fitness of the petitioner, and whether the petitioner has been rehabilitated, as further described in this subdivision. All conduct engaged in after the date of admission to The Florida Bar shall be relevant in proceedings under this rule.
(1)Disqualifying Conduct. A record manifesting a deficiency in the honesty, trustworthiness, diligence, or reliability of a petitioner may constitute a basis for denial of reinstatement. The following shall be considered as disqualifying conduct:
(A) unlawful conduct;
(B) academic misconduct;
(C) making or procuring any false or misleading statement or omission of relevant information, including any false or misleading statement or omission on any application requiring a showing of good moral character;
(D) misconduct in employment;
(E) acts involving dishonesty, fraud, deceit, or misrepresentation;
(F) abuse of legal process;
(G) financial irresponsibility;
(H) neglect of professional obligations;
(I) violation of an order of a court;
(J) evidence of mental or emotional instability;
(K) evidence of drug or alcohol dependency;
(L) denial of admission to the bar in another jurisdiction on character and fitness grounds;
(M) disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction; and
(N) any other conduct that reflects adversely upon the character or fitness of the applicant.
*20 (2) Determination of Character and Fitness. In addition to other factors in making this determination, the following factors should be considered in assigning veight and significance to prior conduct:
(A) age at the time of the conduct;
(B) recency of the conduct;
(C) reliability of the information concerning the conduct;
(D) seriousness of the conduct;
(E) factors underlying the conduct;
(F) cumulative effect of the conduct or information;
(G) evidence of rehabilitation;
(H) positive social contributions since the conduct;
(I) candor in the discipline and reinstatement processes; and
(J) materiality of any omissions or misrepresentations.
(3) Elements of Rehabilitation. Any petitioner for reinstatement from discipline for prior misconduct shall be required to produce clear and convincing evidence of such rehabilitation including, but not limited to, the following elements:
(A) strict compliance with the specific conditions of any disciplinary, .judicial, administrative, or other order, where applicable;
(B) unimpeachable character and moral standing in the community;
(C) good reputation for professional ability, where applicable;
(D) lack of malice and ill feeling toward those who by duty were compelled to bring about the disciplinary, judicial, administrative, or other proceeding;
(E) personal assurances, supported by corroborating evidence, of a desire and intention to conduct one’s self in an exemplary fashion in the future;
(F) restitution of funds or property, where applicable;
(G) positive action showing rehabilitation by such things as a person’s occupation, religion, or community or civic service.
Merely showing that an individual is now living as and doing those things that should be done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society. The requirement of positive action is appropriate for persons seeking reinstatement to the bar as well as for applicants for admission to the bar because service to one’s community is an essential obligation of members of the bar.
(hg) Hearing; Notice; Evidence.
(1) Notice. The referee to whom the petition for reinstatement is referred shall fix a time and place for hearing, and notice thereof shall be given at least 10 days prior to the hearing to the petitioner, to attorneys representing The Florida Bar, and to such other persons as may be designated by the referee to whom the petition is referred.
(2) Appearance. Any persons to whom notice is given, any other interested persons, or any local bar association may appear before the referee in support of or in opposition to the petition at any time or times fixed for hearings thereon.
(3) Failure of Petitioner to be Examined. For the failure of the petitioner to submit to examination as a witness pursuant to notice given, the referee shall dismiss the petition for reinstatement unless good cause is shown for such failure.
(4) Summary Procedure. If after the completion of discovery bar counsel is un *21 able to discover any evidence on which denial of reinstatement may be based and if no other person provides same, bar counsel may, with the approval of the designated reviewer and staff counsel, stipulate to the issue of reinstatement, including conditions thereon. The stipulation shall include a statement of costs as provided elsewhere in these Rules Regulating The Florida Bar.
(i h) Prompt Hearing; Report. The referee to whom a petition for reinstatement has been referred by the chief justice shall proceed to a prompt hearing, at the conclusion of which the referee shall make and file with the Supreme Court of Florida a report that shall include the findings of fact and a recommendation as to whether the petitioner is qualified to resume the practice of law. Such report shall be in the form prescribed by the board. The referee shall file the report and record in the Supreme Court of Florida and shall serve a copy of the report and record on staff counsel and a copy of the report only on all other parties. Staff counsel shall make a copy of the record, as furnished, available to other parties upon request and payment of actual costs of reproduction.
(j i) Review. Review of referee reports in reinstatement proceedings shall be in accordance with rule 3-7.7.
(k j) Recommendation of Referee and Judgment of the Court. If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the judgment referee shall enter a report recommending, and the court may enter an order of, reinstatement of the petitioner in The Florida Bar; provided, however, that the judgment- may make such reinstatement may be conditio-naled upon the payment of all or part of the costs of the proceeding and upon the making of partial or complete restitution to parties harmed by the petitioner’s misconduct that led to the petitioner’s suspension of membership in The Florida Bar or conduct that led to the petitioner’s incapacity; and further provided, however, if suspension or incapacity of the petitioner has continued for more than 3 years, the reinstatement may be conditioned upon the furnishing of such proof of competency as may be required by the judgment in the discretion of the Supreme Court of Florida, which proof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of the suspension or incapacity.
(I k) Successive Petitions. No petition for reinstatement shall be filed within 1 year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person. In cases of incapacity no petition for reinstatement shall be filed within 6 months following an adverse judgment under this rule.
(m) Readmission After- Disciplinary Resignation. — In-fhe-case of a disciplinary resignation, — no—readmission—application may be filed-until 3 years after the date of the order-of the Supreme Court of Florida that accepted-such disciplinary- resignation or — such-additional time as the attorney may have-stated in a petition for disciplinary resignation. — No application for readmission may be filed until all costs in disciplinary cases that were dismissed because of-the disciplinary resignation have been paid by the applicant for-r-eadmission.. If an attorney’s petition -for — disciplinary resignation-states that it is-without leave to apply^-for — readmission, -suoh — condition shall preclude any readmission.-
(« Z) Petitions for Reinstatement to Membership in Good Standing.
*22 (1) Availability. Petitions for reinstatement under this rule are available to members placed on the inactive list for incapacity not related to misconduct and suspended members of the bar when the disciplinary judgment conditions their reinstatement upon a showing of compliance with specified conditions.
(2) Style of Petition. Petitions shall be styled in the Supreme Court of Florida and filed with-the Supreme- Court of Florida-in quadruplicate an original and 1 copy filed therewith.-, with — a A copy shall be served on sStaff eCounsel, and The Florida Bar, 650 Apalachee Parkway, in Tallahassee, Florida 32399-2300.
(3) Contents of Petition. The petition shall be verified by the petitioner and shall be accompanied by a written authorization to the District Director of the Internal Revenue Service, authorizing the furnishing of certified copies of the petitioner’s tax returns for the past 5 years or since admission to the bar, whichever is greater. The authorization shall be furnished on a separate sheet. The petition shall have attached as an exhibit a true copy of all disciplinary judgments previously entered against the petitioner. It shall also include the petitioner’s statement concerning the following:
(A) name, age, residence, address, and number and relation of dependents of the petitioner;
(B) the conduct, offense, or misconduct upon which the suspension or incapacity was based, together with the date of such suspension or incapacity;
(C) the names and addresses of all complaining witnesses in any disciplinary proceedings that resulted in suspension; and the name and address of the referee or judge who heard such disciplinary proceedings or of the trial judge, complaining witnesses, and prosecuting attorney, if suspension was based upon conviction of a felony or misdemeanor involving moral turpitude;
(D) the nature of the petitioner’s occupation in detail since suspension or incapacity, with names and addresses of all partners, associates in business, and employers, if any, and dates and duration of all such relations and employments;
(E) a statement showing the approximate monthly earnings and other income of the petitioner and the sources from which all such earnings and income were derived during said period;
(F) a statement showing all residences maintained during said period, with names and addresses of landlords, if any;
(G) a statement showing all financial obligations of the petitioner including but not limited to amounts claimed, unpaid, or owing to the Florida Bar Clients’ Security Fund or former clients at the date of filing of the petition, together with the names and addresses of all creditors;
(H) a statement of restitution made for any and all obligations to all former clients and the Florida Bar Clients’ Security Fund and the source and amount of funds used for this purpose;
(I) a statement showing dates, general nature, and ultimate disposition of every matter involving the arrest or prosecution of the petitioner during said period for any crime, whether felony or misdemeanor, together with the names and addresses of complaining witnesses, prosecuting attorneys, and trial judges;
(J) a statement as to whether any applications were made during said period for a license requiring proof of good character for its procurement; and, as to each such application, the date and the name and address of the authority to whom it was addressed and the disposition thereof;
*23 (K) a statement of any procedure or inquiry, during said period, covering the petitioner’s standing as a member of any profession or organization, or holder of any license or office, that involved the censure, removal, suspension, revocation of license, or discipline of the petitioner; and, as to each, the dates, facts, and the disposition thereof and the name and address of the authority in possession of the record thereof;
(L) a statement as to whether any charges of fraud were made or claimed against the petitioner during said period, whether formal or informal, together with the dates and names and addresses of persons making such charges;
(M) a concise statement of facts claimed to justify reinstatement to The Florida Bar;
(N) a statement showing the dates, general nature, and final disposition of every civil action wherein the petitioner was either a party plaintiff or defendant, together with dates of filing of complaints, titles of courts and causes, and the names and addresses of all parties and of the trial judge or judges, and names and addresses of all witnesses who testified in said action or actions; and
(O) a statement showing what amounts, if any, of the costs assessed against the accused attorney in the prior disciplinary proceedings against the petitioner have been paid by the petitioner and the source and amount of funds used for this purpose.
(4) Comments on Petition. Upon the appointment of a referee and bar counsel, copies of the petition shall be furnished by the executive director to local board members, local grievance committees, and to such other persons as are mentioned in this rule. Persons will be asked to direct their comments to bar counsel. The proceedings and finding of the referee shall relate to those matters described in this rule and also to those matters tending to show the petitioner’s rehabilitation, present fitness to resume the practice of law, and the effect of such proposed reinstatement upon the administration of justice and purity of the courts and confidence of the public in the profession.
(5) Costs Deposit. The petition shall be accompanied by a deposit for costs of $500.
(e m) Costs.
(1) Taxable Costs. Taxable costs of the proceedings shall include only:
(A) investigative costs, including travel and out-of-pocket expenses;
(B) court reporters’ fees;
(C) copy costs;
(D) telephone charges;
(E) fees for translation services;
(F) witness expenses, including travel and out-of-pocket expenses;
(G) travel and out-of-pocket expenses of the referee;
(H) travel and out-of-pocket expenses of counsel in the proceedings, including the petitioner if acting as counsel; and
(I) an administrative fee in the amount of $750 when costs are assessed in favor of the bar.
(2) Discretion of Referee. The referee shall have discretion to award costs and absent an abuse of discretion the referee’s award shall not be reversed.
(3) Assessment of Bar Costs. When-the bar^ is successful — i-n-whole or in partr-the ■referee may-assess the- bar’s costs against the petitioner The costs incurred by the bar in any reinstatement case may be assessed against the petitioner unless it is shown that the costs of the bar were un *24 necessary, excessive, or improperly authenticated.
(4) Assessment of Petitioner’s Costs. When — the bar — unsuccessfully opposes a petition for reinstatement or-readmission,-tThe referee may assess the petitioner’s costs against the bar in the event that there was no justiciable issue of either law or fact raised by the bar unless it is shown that the costs were unnecessary, excessive, or improperly authenticated.
(n) Readmission; Applicability. A former member who has been disbarred or whose petition for disciplinary resignation has been accepted may be admitted again only upon full compliance with the rules and regulations governing admission to the bar. No application for readmission following disbarment or disciplinary resignation may be tendered until such time as all restitution and disciplinary costs as may have been ordered or assessed have been paid together with any interest accrued.
(1) Readmission After Disbarment Except as might be otherwise provided in these rules, no application for admission may be tendered within 5 years after the date of disbarment or such longer period of time as the court might determine in the disbarment order. An order of disbarment that states the disbarment is permanent shall preclude readmission to The Florida Bar.
(2) Readmission After Disciplinary Resignation. In the case of a disciplinary resignation, no readmission application may be filed until 3 years after the date of the order of the Supreme Court of Florida that accepted such disciplinary resignation or such additional time as the attorney may have stated in a petition for disciplinary resignation. No application for readmission may be filed until all costs in disciplinary cases that were dismissed because of the disciplinary resignation have been paid by the applicant for readmission. If an attorney’s petition for disciplinary resignation states that it is without leave to apply for readmission, such condition shall preclude any readmission.
RULE 3-7.12 DISCIPLINARY RESIGNATION FROM THE FLORIDA BAR
If a disciplinary agency is investigating the conduct of an attorney, or if such an agency has recommended probable cause, then disciplinary proceedings shall be deemed to be pending and a petition for disciplinary resignation may be filed pursuant to this rule. Disciplinary resignation is the functional equivalent of disbarment in that both sanctions terminate the license and privilege to practice law and both require readmission to practice under the Rules of the Supreme Court Relating to Admissions to the Bar, An attorney may seek disciplinary resignation from The Florida Bar during the progress of disciplinary proceedings in the following manner:
(a) Petition for Disciplinary Resignation. The petition for disciplinary resignation shall be styled “The Florida Bar v. (respondent’s name),” titled “Petition for Disciplinary Resignation,” filed with the Supreme Court of Florida and contain a statement of all past and pending disciplinary actions and criminal proceedings against the petitioner. Such statement shall describe the charges made or those under investigation for professional misconduct, results of past proceedings, and the status of pending investigations and proceedings. The petition shall state whether it is with or without leave to reapply for readmission to the bar. A copy of the petition shall be served upon the executive director of The Florida Bar.
*25 (b) Judgment. Within 60 days after filing and service of the petition, The Florida Bar may file with the Supreme Court of Florida its response to the petition either supporting or opposing the petition for disciplinary resignation. A copy of the response shall be served upon the petitioner. The Supreme Court of Florida shall consider the petition, any response thereto, and the charges against the petitioner. If it has been shown by the petitioner in a proper and competent manner that the public interest will not be adversely affected by the granting of the petition and that such will neither adversely affect the integrity of the courts nor hinder the administration of justice nor the confidence of the public in the legal profession, the Supreme Court of Florida shall enter an appropriate judgment granting disciplinary resignation; otherwise, the petition shall be denied. If the judgment grants the disciplinary resignation, the judgment may require that the disciplinary resignation be subject to appropriate conditions. Such conditions may include, but not be limited to, requiring the petitioner to submit to a full audit of all client trust accounts, executing a financial affidavit attesting to current personal and professional financial circumstances, and maintaining a current mailing address for a stated period, of time.
(c) Delay of Disciplinary Proceedings. The filing of a petition for disciplinary resignation shall'not stay the progress of the disciplinary proceedings without the approval of the board or, if a referee has been appointed and evidence has been taken, then without the approval of the referee.
(d) Dismissal of Pending Disciplinary Cases. If disciplinary resignation is accepted under this rale, such disciplinary resignation shall serve to dismiss all pending disciplinary cases.
(e)Costs of Pending Disciplinary Cases. The judgment of the court granting disciplinary resignation may impose a judgment for the costs expended by The Florida Bar in all pending disciplinary cases against the respondent. Such costs shall be of the types and amounts as authorized elsewhere in these Rules Regulating The Florida Bar.
RULE 4-1.5 FEES FOR LEGAL SERVICES
(a) Illegal, Prohibited, or Clearly Excessive Fees. An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar. A fee is clearly excessive when:
(1) after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee exceeds a reasonable fee for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney; or
(2) the fee is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a non-client party, or any court, as to either entitlement to, or amount of, the fee.
(b) Factors to Be Considered in Determining Reasonable Fee. Factors to be considered as guides in determining a reasonable fee include:
(1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
*26 (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee, or rate of fee, customarily charged in the locality for -legal services of a comparable or similar nature;
(4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client’s ability to pay rested to any significant degree on the outcome of the representation.
(c) Consideration of All Factors. In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors.
(d) Enforceability of Fee Contracts. Contracts or agreements for attorney’s fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, prohibited by this rule, or clearly excessive as defined by this rule.
(e) Duty to Communicate Basis or Rate of Fee to Client. When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation.
(f) Contingent Fees. As to contingent fees:
(1) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (f)(3) or by law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in' the event of settlement, trial, or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.
(2) Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding whereby the lawyer’s compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only where such fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client. No lawyer or firm may participate in the *27 fee without the consent of the client in writing. Each participating lawyer or law firm shall sign the contract with the client and shall agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client shall be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule shall apply to such fee contracts.
(3) A lawyer shall not enter into an arrangement for, charge, or collect:
(A) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
(B) a contingent fee for representing a defendant in a criminal case.
(4) A lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for personal injury or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, whereby the compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shall do so only under the following requirements:
(A) The contract shall contain the following provisions:
(i) “The undersigned client has, before signing this contract, received and read the statement of client’s rights and understands each of the rights set forth therein. The undersigned client has signed the statement and received a signed copy to refer to while being represented by the undersigned attorney(s).”
(ii) “This contract may be cancelled by written notification to the attorney at any time within 3 business days of the date the contract was signed, as shown below, and if cancelled the client shall not be obligated to pay any fees to the attorney for the work performed during that time. If the attorney has advanced funds to others in representation of the client, the attorney is entitled to be reimbursed for such amounts as the attorney has reasonably advanced on behalf of the client.”
(B) The contract for representation of a client in a matter set forth in subdivision (f)(4) may provide for a contingent fee arrangement as agreed upon by the client and the lawyer, except as limited by the following provisions:
(i) Without prior court approval as specified below, any contingent fee that exceeds the following standards shall be presumed, unless rebutted, to be clearly excessive:
a. Before the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action:
1. 33-1/3% of any recovery up to $1-million; plus
2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
b. After the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action, through the entry of judgment:
1. 40% of any recovery up to $1 million; plus
*28 2. 30% of any portion of the recovery between $1 million and $2 million; plus
3. 20% of any portion of the recovery exceeding $2 million.
c. If all defendants admit liability at the time of filing their answers and request a trial only on damages:
1. 33-1/3% of any recovery up to $1 million; plus
2. 20% of any portion of the recovery between $1 million and $2 million; plus
3. 15% of any portion of the recovery exceeding $2 million.
d. An additional 5% of any recovery after institution of any appellate proceeding is filed or post-judgment relief or action is required for recovery on the judgment.
(n) If any client is unable to obtain an attorney of the client’s choice because of the limitations set forth in (f)(4)(B)(i), the client may petition the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for approval of any fee contract between the client and an attorney of the client’s choosing. Such authorization shall be given if the court determines the client has a complete understanding of the client’s rights and the terms of the proposed contract. The application for authorization of such a contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service on the defendant and this aspect of the file may be sealed. A petition under this subdivision shall contain a certificate showing service on the client and The Florida Bar in Tallahassee. Authorization of such a contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive under subdivisions (a) and (b).
(iii) In cases where the client is to receive a recovery that will be paid to the client on a future structured or periodic basis, the contingent fee percentage shall only be calculated on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, then this limitation does not apply. No attorney may separately negotiate with the defendant for that attorney’s fee in a structured verdict or settlement where such separate negotiations would place the attorney in a position of conflict.
(C) Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shall provide the client with a copy of the statement of client’s rights and shall afford the client a full and complete opportunity to understand each of the rights as set forth therein. A copy of the statement, signed by both the client and the lawyer, shall be given to the client to retain and the lawyer shall keep a copy in the client’s file. The statement shall be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements as subdivision (f)(5).
(D) As to lawyers not in the same firm, a division of any fee within subdivision (f)(4) shall be on the following basis:
(i) To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.
(ii) To the lawyer assuming secondary responsibility for the legal services on be *29 half of the client, a máximum of 25% of the total fee. Any fee in excess of 25% shall be presumed to be clearly excessive.
(iii) The 25% limitation shall not apply to those cases in which 2 or more lawyers or firms accept substantially equal active participation in the providing of legal services. In such circumstances counsel shall apply to the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court wherein the cause of action arose, for authorization of the fee division in excess of 25%, based upon a sworn petition signed by all counsel that shall disclose in detail those services to be performed. The application for authorization of such a contract may be filed as a separate proceeding before suit or simultaneously with the filing of a complaint. Proceedings thereon may occur before service of process on any party and this aspect of the file may be sealed. Authorization of such contract shall not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive. An application under this subdivision shall contain a certificate showing service on the client and The Florida Bar. Counsel may proceed with representation of the client pending court approval.
(iv) The percentages required by this subdivision shall be applicable after deduction of any fee payable to separate counsel retained especially for appellate purposes.
(5) In the event there is a recovery, upon the conclusion of the representation, the lawyer shall prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm. A copy of the closing statement shall be executed by all participating lawyers, as well as the client, and each shall receive a copy. Each participating lawyer shall retain a copy of the written fee contract and closing statement for 6 years after execution of the closing statement. Any contingent fee contract and closing statement shall be available for inspection at reasonable times by the client, by any other person upon judicial order, or by the appropriate disciplinary agency.
(g) Division of Fees Between Lawyers in Different Firms. Subject to the provisions of subdivision (f)(4)(D), a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and:
(1) the division is in proportion to the services performed by each lawyer; or
(2) by written agreement with the client:
(A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and
(B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.
(h) Credit Plans. Charges made by any lawyer or law firm under an approved credit plan shall be only for services actually rendered or cash actually paid on behalf of the client. No higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer’s or law firm’s participation in an approved credit plan.
STATEMENT OF CLIENT’S RIGHTS FOR CONTINGENCY FEES
Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as *30 a prospective, client, you should be aware of these rights:
1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with 1 lawyer you may talk with other lawyers.
2. Any contingent fee contract must be in writing and you have 3 business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within 3 business days of signing the contract. If you withdraw from the contract within the first 3 business days, you do not owe the lawyer a fee although you may be responsible for the lawyer’s actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for work the lawyer has done.
3. Before hiring a lawyer, you, the ' client, have the right to know about the lawyer’s education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer’s actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.
4. Before signing a contingent fee contract with you, a lawyer must advise you whether the lawyer intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least 1 lawyer from each law firm must sign the contingent fee contract.
5. If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.
6. You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.
*31 7. You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money that you might have to pay to your lawyer for costs and liability you might have for attorney’s fees, costs, and expenses to the other side.
8. You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer’s fee. Until you approve the closing statement you need not pay any money to anyone, including your lawyer. You also have the right to have every lawyer or law firm working on your case sign this closing statement.
9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer’s ability.
10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.
11. If at any time you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 850/561-5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit unless your fee contract provides for arbitration. You can request, bybut may not require, that a provision for arbitration (under chapter 682, Florida Statutes, or under the fee arbitration rule of the Rules Regulating The Florida Bar) be included in your fee contract.
Client Signature
Date
Attorney Signature
Date
Comment
Basis or rate of fee
When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to recite all the factors that underlie the basis of the fee but only those that are directly involved in its computation. It is sufficient, for example, to state the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility *32 of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer’s customary fee schedule is sufficient if the basis or rate of the fee is set forth.
Rule 4-1.8(e) should be consulted regarding a lawyer’s providing financial assistance to a client in connection with litigation.
Terms of payment
A lawyer may require advance payment of a fee but is obliged to return any unearned portion. See rule 4-1.16(d). A lawyer is not, however, required to return retainers that, pursuant to an agreement with a client, are not refundable. A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to rule 4-1.8(i). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer’s special knowledge of the value of the property.'
An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client’s interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client’s ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client’s best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage.
Rule 4 — 1.5(f)(3) does not apply to lawyers seeking to obtain or enforce judgments for arrearages.
Contingent fee regulation
Rule 4 — 1.5(f)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.
Rule 4 — 1.5(f)(4)(B) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncon-tingent and part contingent attorney’s fees, rule 4 — 1.5(f)(4)(B) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncontingent portion of the fee even if the matter was not successfully prosecuted or if the noncontingent portion of the fee exceeded the schedule set forth in rule 4-1.5(f)(4)(B). Rule 4-1.5(f)(4)(B) should, however, be construed to apply to any additional contingent portion of such a contract when considered ’together with earned noncontingent fees. Thus, under such a contract a lawyer may demand or collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth in rule 4 — 1.5(f)(4)(B).
The limitations in rule 4 — 1.5(f)(4)(B)(i)c are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent of the loss or the extent of injury suffered *33 by the client. If the trial involves not only the issue of damages but also such questions as proximate cause, affirmative defenses, seat belt defense, or, other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.
Rule 4 — 1.5(f)(4)(B)(ii) provides the limitations set forth in subdivision (f)(4)(B)(i) may be waived by the client upon approval by the appropriate judge. This waiver provision may not be used to authorize a lawyer to charge a client a fee that would exceed rule 4-1.5(a) or (b). It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular lawyer to represent the client or the case involves complex, difficult, or novel questions of law or fact that would justify a contingent fee greater than the schedule but not a contingent fee that would exceed rule 4 — 1.5(b).
Upon a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client: (a) understands the right to have the limitations in rule 4 — 1.5(f)(4)(B) applied in the specific matter; and (b) understands and approves the terms of the proposed contract. The consideration by the trial comb of the waiver petition is not to be used as an opportunity for the court to inquire into the merits or details of the particular action or claim that is the subject of the contract.
The proceedings before the trial court and the trial court’s decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar. However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable case law or rules of evidence.
Rule 4-1.5(f)(4)(B)(iii) prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery being paid on a structured or periodic basis. This prohibition does not apply if the lawyer’s fee is being paid over the same length of time as the schedule of payments to the client.
Contingent fees are prohibited in criminal and certain domestic relations matters. In domestic relations cases, fees that include a bonus provision or additional fee to be determined at a later time and based on results obtained have been held to be impermissible contingency fees and therefore subject to restitution and disciplinary sanction as elsewhere stated in these Rules Regulating The Florida Bar.
Division of fee
A division of fee is a single billing to a client covering the fee of 2 or more lawyers who are not in the same firm. A division of fee facilitates association of more than 1 lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Subject to the provisions of subdivision (f)(4)(D), subdivision (g) permits the lawyers to divide a fee on either the basis of the proportion of services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object. It does require disclosure to the client of the share that each lawyer is to receive. Joint responsibility for the representation entails the obligations stated in rule 4-5.1 for purposes of the matter involved.
*34 Disputes over fees
Since the fee arbitration rale (Chapter 14) has been established by the bar to provide a procedure for resolution of fee disputes, the lawyer should conscientiously consider submitting to it. Where law prescribes a procedure for determining a lawyer’s fee, for example, in representation of an executor or administrator, a class, or a person entitled to a reasonable fee as part of the measure of damages, the lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.
Referral fees and practices
A secondary lawyer shall not be entitled to a fee greater than the limitation set forth in rule 4 — 1.5(f)(4)(D)(ii) merely because the lawyer agrees to do some or all of the following: (a) consults with the client; (b) answers interrogatories; (c) attends depositions; (d) reviews pleadings; (e) attends the trial; or (f) assumes joint legal responsibility to the client. However, the provisions do not contemplate that a secondary lawyer who does more than the above is necessarily entitled to a larger percentage of the fee than that allowed by the limitation.
The provisions of rale 4 — 1.5(f) (4) (D) (iii) only apply where the participating lawyers have for purposes of the specific case established a co-counsel relationship. The need for court approval of a referral fee arrangement under rule 4 — 1.5(f)(4)(D)(iii) 'should only occur in a small percentage of cases arising under rule 4-1.5(f)(4).
In determining if a co-counsel relationship exists, the court should look to see if the lawyers have established a special partnership agreement for the purpose of the specific case or matter. If such an agreement does exist, it must provide for a sharing of services or responsibility and the fee division is based upon a division of the services to be rendered or the responsibility assumed. It is contemplated that a co-counsel situation would exist where a division of responsibility is based upon, but not limited to, the following: (a) based upon geographic considerations, the lawyers agree to divide the legal work, responsibility, and representation in a convenient fashion. Such a situation would occur when different aspects of a case must be handled in different locations; (b) where the lawyers agree to divide the legal work and representation based upon their particular expertise in the substantive areas of law involved in the litigation; or (c) where the lawyers agree to divide the legal work and representation along established lines of division, such as liability and damages, causation and damages, or other similar factors.
The trial court’s responsibility when reviewing an application for authorization of a fee division under rule 4 — 1.5(f)(4)(D)(iii) is to determine if a co-counsel relationship exists in that particular case. If the court determines a co-counsel relationship exists and authorizes the fee division requested, the court does not have any responsibility to review or approve the specific amount of the fee division agreed upon by the lawyers and the client.
Rule 4-1.5(f)(4)(D)(iv) applies to the situation where appellate counsel is retained during the trial of the case to assist with the appeal of the case. The percentages set forth in subdivision (f)(4)(D) are to be applicable after appellate counsel’s fee is established. However, the effect should not be to impose an unreasonable fee on the client.
RULE 4-8.3 REPORTING PROFESSIONAL MISCONDUCT
(a) Reporting Misconduct of Other Lawyers. A lawyer having knowledge *35 that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer’s honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate professional authority.
(b) Reporting Misconduct of Judges. A lawyer having knowledge that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge’s fitness for office shall inform the appropriate authority.
(c) Confidences Preserved. This rule does not require disclosure of information otherwise protected by rule 4-1.6.
(d) Limited Exception for LOMAS Counsel. A lawyer employed by or acting on behalf of the Law Office Management Assistance Service (LOMAS) shall not have an obligation to disclose knowledge of the conduct of another member of The Florida Bar that raises a substantial question as to the other lawyer’s fitness to practice, if the lawyer employed by or acting on behalf of LOMAS acquired the knowledge while engaged in a LOMAS review of the other lawyer’s practice. Provided further, however, that if the LOMAS review is conducted as a part of a disciplinary sanction this limitation shall not be applicable and a report shall be made to the appropriate disciplinary agency.
Comment
Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct. Lawyers have a similar obligation with respect to judicial misconduct. An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover. Reporting a violation is especially important where the victim is unlikely to discover the offense.
A report about misconduct is not required where it would involve violation of rule 4-1.6. However, a lawyer should encourage a client to consent to disclosure where prosecution would not substantially prejudice the client’s interests.
If a lawyer were obliged to report every violation of the rules, the failure to report any violation would itself be a professional offense. Such a requirement existed in many jurisdictions, but proved to be unenforceable. This rule limits the reporting obligation to those offenses that a self-regulating profession must vigorously endeavor to prevent. A measure of judgment is, therefore, required in complying with the provisions of this rule. The term “substantial” refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware.
The duty to report professional misconduct does not apply to a lawyer retained to represent a lawyer whose professional conduct is in question. Such a situation is governed by the rules applicable to the client-lawyer relationship.
RULE 4-8.4 MISCONDUCT
A lawyer shall not:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to *36 knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;
(e) state or imply an ability to influence improperly a government agency or official;
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law;
(g) fail to respond, in writing, to any official inquiry by bar counsel or a disciplinary agency, as defined elsewhere in these rules, when such bar counsel or the agency is conducting an investigation into the lawyer’s conduct;. A written response shall be made:
(1) within 15 days of the date of the initial written investigative inquiry by bar counsel, grievance committee, or board of governors;
(2) within 10 days of the date of any follow-up written investigative inquiries by bar counsel, grievance committee, or board of governors;
(3) within the time stated in any subpoena issued under these Rules Regulating The Florida Bar (without additional time allowed for mailing);
(4) as provided in the Florida Rules of Civil Procedure or order of the referee in matters assigned to a referee; and
(5) as provided in the Florida Rules of Appellate Procedure or order of the Supreme Court of Florida for matters pending action by that court.
Except as stated otherwise herein or in the applicable rules, all times for response shall be calculated as provided elsewhere in these Rules Regulating The Florida Bar and may be extended or shortened by the inquirer upon good cause shown;
(h) willfully refuse, as determined by a court of competent jurisdiction, to timely pay a child support obligation; or
(i) engage in sexual conduct with a client that exploits the lawyer-client relationship.
Comment
Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving “moral turpitude.” That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, or breach of trust or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.
A lawyer may refuse to comply with an obligation imposed by law upon a good faith belief that no valid obligation exists. The provisions of rule 4-1.2(d) concerning a good faith challenge to the validity, scope, meaning, or application of the law *37 apply to challenges of legal regulation of the practice of law.
Subdivision (d) of this rule proscribes conduct that is prejudicial to the administration of justice. Such proscription includes the prohibition against discriminatory conduct committed by a lawyer while performing duties in connection with the practice of law. The proscription extends to any characteristic or status that is not relevant to the proof of any legal or factual issue in dispute. Such conduct, when directed towards litigants, jurors, witnesses, court personnel, or other lawyers, whether based on race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, physical characteristic, or any other basis, subverts the administration of justice and undermines the public’s confidence in our system of justice, as well as notions of equality. This subdivision does not prohibit a lawyer from representing a client as may be permitted by applicable law, such as, by way of example, representing a client accused of committing discriminatory conduct.
Lawyers holding public office assume legal responsibilities going beyond those of other citizens. A lawyer’s abuse of public office can suggest an inability to fulfill the professional role of attorney. The same is true of abuse of positions of private trust such as trustee, executor, administrator, guardian, or agent and officer, director, or manager of a corporation or other organization.
A lawyer’s obligation to respond to an inquiry by a disciplinary agency is stated in subdivision (g) and rule 3-7.6(g)(2). While response is mandatory, the lawyer may deny the charges or assert any available privilege or immunity or interpose any disability that prevents disclosure of certain matter. A response containing a proper invocation thereof is sufficient under the Rules Regulating The Florida Bar. This obligation is necessary to ensure the proper and efficient operation of the disciplinary system.
Subdivision (h) of this rule was added to make consistent the treatment of attorneys who fail to pay child support with the treatment of other professionals who fail to pay child support, in accordance with the provisions of section 61.13015, Florida Statutes. That section provides for the suspension or denial of a professional license due to delinquent child support payments after all other available remedies for the collection of child support have been exhausted. Likewise, subdivision (h) of this rule should not be used as the primary means for collecting child support, but should be used only after all other available remedies for the collection of child support have been exhausted. Before a grievance may be filed or a grievance procedure initiated under this subdivision, the court that entered the child support order must first make a finding of willful refusal to pay. The child support obligation at issue under this rule includes both domestic (Florida) and out-of-state (URESA) child support obligations, as well as arrearages.
Subdivision (i) proscribes exploitation of the client and the lawyer-client relationship by means of commencement of sexual conduct. The lawyer-client relationship is grounded on mutual trust. A sexual relationship that exploits that trust compromises the lawyer-client relationship. A sexual relationship between a lawyer and a client that exists before commencement of the lawyer-client relationship does not violate this subdivision if the lawyer and client continue to engage in sexual conduct during the legal representation. For purposes of this subdivision, client means an individual, not a corporate or other non- *38 personal entity, and lawyer refers only to the lawyer(s) engaged in the legal representation and not other members of the law firm.
RULE 6-3.2 CERTIFICATION COMMITTEES
For each certification area approved by the Supreme Court of Florida, a 9-mem-ber committee, bearing the name of the area, shall be appointed by the president of The Florida Bar, with the advice and consent of the board of governors. Initial committee appointees shall be eminent attorneys in each field, shall be members in good standing of The Florida Bar, shall have been admitted to The Florida Bar no less than 10 years, and must meet such other requirements as may in the future be promulgated by the board of legal specialization and education. Initial committee appointees shall be certified in the applicable area of practice by reason of appointment to that area’s certification committee. The committee members shall hold office for 3 years and until their successors are appointed. The committee members shall be appointed to staggered terms of office, and the initial appointees shall serve as follows: 23 members shall serve until June 30 next following then-appointment, 23 members shall serve until the second June 30 following their appointment, and 3 members shall serve until the third June 30 following their appointment. Subsequent appointees must be certified in the area at the time of appointment, must be members in good standing of The Florida Bar, and must meet such other requirements as may be promulgated by the board of legal specialization and education.
RULE 6-3.7 EMERITUS SPECIALIST STATUS
(a) Purpose. The purpose of emeritus specialist status is to recognize the past and continuing contribution of a certified lawyer in the advancement of the speciality area through related career activities that do not constitute the actual practice of law. For purposes of this rule, the “practice of law” means legal work performed for purposes of rendering legal services, advice, or representation.
(b) Applicability. An applicant who seeks emeritus specialist status shall:
(1) be currently board certified by The Florida Bar;
(2) be a member of The Florida Bar in good standing;
(3) no longer be engaged in the practice of law; and
(4) otherwise comply with the applicable rules and policies governing emeritus specialist status.
(c) Qualifications. To qualify for emeritus specialist status, a member shall:
(1) not engage in the active practice of law;
(2) maintain the required level of continuing legal education in the area of certification as provided in the area standards;
(3) demonstrate integrity and professionalism, and submit to peer review as required by the board of legal specialization and education;
(4) promptly report to the board of legal specialization and education any disciplinary complaints or malpractice actions filed against the member;
(5) file the annual audit and pay the annual fee; and
(6) complete the required application and pay the specified fee.
(d) Communication. As an emeritus specialist, the member must:
(1) refrain from any written or oral communication that might be misconstrued *39 as client solicitation for legal services; and,
(2)identify emeritus specialist status in all written or oral communication concerning board certification.
(e) Termination of Emeritus Specialist Status. At such time as the member elects to resume the practice of law, the member may regain recertification as a “certified specialist” upon:
(1) completion of all requirements for recertification within a time frame to be determined by the board of legal specialization and education; and
(2) completion of the required application and payment of the specified fee.
(f) Revocation. Existing rules relating to certification revocation shall also apply to emeritus specialist status.
(g) Exemption. During the 2 years following the effective date of this rule, any member formerly certified by The Florida Bar, whose certificate lapsed or was otherwise not renewed, may apply for emeritus status and qualify for an exemption from the provision that requires current certification. The applicant must demonstrate compliance with all other requirements of this rule. An applicant formerly certified by The Florida Bar, but whose certificate was revoked, is ineligible for this exemption.
RULE 6-3.38 REVOCATION OF CERTIFICATION
(a) Grounds for Revocation. A certificate may be revoked by the board of legal specialization and education if the program for certification in that area is terminated or it is determined after hearing on appropriate notice that:
(1) the certificate was issued to a lawyer who was not eligible to receive a certificate or who made any false representation or misstatement of material fact to the certification committee or the board of legal specialization and education;
(2) the certificate holder failed to abide by all rules and regulations governing the program promulgated by the board of governors or the board of legal specialization and education as amended from time to time, including any requirement or safeguard for continued proficiency;
(3) the certificate holder failed to pay any fee established by the plan; or
(4) the certificate holder no longer meets the qualifications established by the plan or the board of legal specialization and education.
(b) Revocation Due to Disciplinary Action. A certificate may be revoked by the board of governors by reason of disciplinary action taken pursuant to the Rules Regulating The Florida Bar.
RULE 6-3.89 MANNER OF CERTIFICATION
(a) Listing Area of Certification. A member having received a certificate in an area may list the area on the member’s letterhead, business cards, and office door, in the yellow pages of the telephone directory, in approved law lists, and by such other means permitted by the Rules of Professional Conduct. The listing may be made by stating “Board Certified (area of certification) Lawyer” or “Specialist in (area of certification).”
(b) Members of Law Firms. No law firm may list an area of certification for the firm, but membership in the firm does not impair an individual’s eligibility to list areas of certification in accordance with this chapter. Except for the firm listing in the telephone directory, a law firm may show next to the names of any firm members their certification area(s).
*40 RULE 6-3.910 RIGHT OF APPEAL
A lawyer who is refused certification or recertification, or whose certifícate is revoked by the board of legal specialization and education, or any person who is aggrieved by a ruling or determination of that board shall have the right to appeal the ruling to the board of governors under such rules and regulations as it may prescribe. Exhaustion of this right of appeal shall be a condition precedent to judicial review by the Supreme Court of Florida.
RULE 6-3.191 FEES
(a) Application Filing Fee. This fee is for the filing and review of an individual’s certification or recertification application. This fee is not refundable.
(b) Examination/Certification Fee. This fee must be paid before the taking of the examination for certification or before an applicant who otherwise qualifies receives a certificate. This fee is not refundable.
(c) Annual Fee. This fee is assessed against each plan participant required to file an annual audit for a particular year. Collection of the fee shall coincide with the distribution of annual audit forms.
(d) Recertification Extension Fee. This fee is for extending the filing date of an application for recertification. This fee is not refundable.
(e) Challenge/Petition Filing Fee. This fee must accompany the filing of a challenge of an application denial or a petition for grade review. This fee is not refundable.
(f) Appeal Filing Fee. This fee must accompany the filing of an appeal. This fee is not refundable.
(g) Emeritus Application Fee. This fee must accompany the filing of an application for emeritus specialist status. This fee is not refundable.
(d h) Course Approval Evaluation Fee. This fee is assessed against course sponsors who that seek course-approval-of credit toward continuing legal education credit hours required under the plan. This fee is not refundable.
(ei) Individual Credit Approval Fee. This fee is assessed against applicants or plan participants to cover administrative costs of processing a credit request where a sponsor has not sought course approval under the plan.
RULE 6-3.142 CONFIDENTIALITY
All matters including but not limited to applications, references, tests and test scores, files, reports, investigations, hearings, findings, and recommendations shall be confidential so far as consistent with the effective administration of this plan, fairness to the applicant, and due process of law.
RULE 6-3.123 AMENDMENTS
Standards for individual areas of certification may be amended by the board of governors consistent with the notice and publication requirements set forth in rule 1-12.1.
RULE 6-10.3 MINIMUM CONTINUING LEGAL EDUCATION STANDARDS
(a) Applicability. Every member except those exempt under rule 6 — 10.3(c)(4) and (5) shall comply and report compliance with the continuing legal education requirement.
(b) Minimum Hourly Continuing Legal Education Requirements. Each member shall complete a minimum of 30 credit hours of approved continuing legal education activity every 3 years. Five of the 30 hours must be in the-area- of ap *41 proved legal ethics, or professionalism, m-cluding approved substance abuse, or mental illness awareness programs. Courses offering credit in professionalism must be approved by the center for professionalism. These 5 hours are to be included in, and not in addition to, the regular 30-hour requirement. If a member completes more than 530 hours during any reporting cycle, the excess professionalism credits cannot be carried over to the next reporting cycle.
(c) Exemptions.
(1) Active military service.
(2) Undue hardship.
(3) Nonresident members not delivering legal services or advice on matters or issues governed by Florida law.
(4) Members of the full-time federal judiciary who are prohibited from engaging in the private practice of law.
(5) Justices of the Supreme Court of Florida and judges of the district courts of appeal, circuit courts, and county courts, and such other judicial officers and employees as may be designated by the Supreme Court of Florida.
(6) Inactive members of The Florida Bar.
(d) Course Approval. Course approval shall be set forth in policies adopted pursuant to this rule. Special policies shall be adopted for courses sponsored by governmental agencies for employee attorneys that shall exempt such courses from any course approval fee and may exempt such courses from other requirements as determined by the board of legal specialization and education.
(e) Accreditation of Hours. Accreditation shall be as set forth in the policies adopted pursuant to this rule. If a course is presented or sponsored by or has received credit approval from an organized state bar (whether integrated or voluntary), such course shall be deemed an approved course for purposes of this rule.
(f) Full-time Government Employees. Credit hours shall be given full-time government employees for courses presented by governmental agencies. Application for credit approval may be submitted by the full-time government attorney before or after attendance, without charge.
(g) Skills Training Preadmission. The board of legal specialization and education may approve for CLER credit a basic skills or entry level training program developed and presented by a governmental entity. If approved, credit earned through attendance at such course, within 8 months prior to admission to The Florida Bar, shall be applicable under rule 6-10.3(b).
RULE 6-12.1 BASIC SKILLS COURSE REQUIREMENT
(a) Preamble. It is of primary importance to the public and to the members of The Florida Bar that attorneys begin their legal careers with a thorough and practical understanding of the law. To accomplish that objective, each member of The Florida Bar (hereinafter referred to as “member”) is-required-to shall comply with the basic skills course requirement (hereafter hereinafter BSCR) through the completion of continuing legal education programs developed and presented by the yYoung ILawyers dDivision of The Florida Bar (hereafter hereinafter YLD). Oversight of member compliance with this rule shall be the responsibility of the board of legal specialization and education (hereinafter BLSE.)
(b) Basic Skills Course- Requirement;
(1) The BSCR shall consist-ofe-
*42 APPENDIX — Continued
(A) a program which address issuees of ethics, professionalism, law office management, — feast—accountings—and—other “hands-on” -and-prae-ticat-subjects, or such other subjects — as are determined to be -reasonable-and/or-necessary by the young lawyers-division-of -The-Eíorida Bar, and
(B)-live attendance-at-2 “basic” level substantive- continuing-legal-edueation pro-grams-presented-by the-Y-LEh
(2) The BSCR shall -be.completed as follows:
(A) the portion of BSCR described in r-ule-6-12.1(b)(l)(A) above shall -be com-pleted4
(i)--no sooner than 8- months prior to and neAater — than-l-2-months-Mlovñng- admission to TbeA-lorida Bar, or
(4i)-no-kter-than-12^Benths-follovidng the expiration of any exempt or deferred status-(desc-ribed in rule 6-12.1(d) below); and
(E) the portion-of-BSCR -described in rule 6-12.-l-(-b)(-l)(B) above shall be completed-^within-the initial 3-year-eentinuing legal-ed-ueation- cycle after admission to The Florida-Bar» or vdthin-2-years-after-the expiration-of-any exempt status-
es) Each member shall receive continuing-legal education-eredit-fer-completion of the-BSCR which shall be applieabie-u-nder rule 6-10.3(b), whether-taken — before or after admission to-The-F-lorida Bar-
bed-Applicability. Every — member admitted to The Florida-Bar-after-Qctober 1, -l-988--except those exempt under rule 6-■l-2-.-l-(d-)-shallcomply-v4th-the-BSCR.
(d) Deferment or Exemption.
(1) A member of The Florida Bar is eligible-to defer compliance with the BSCR id:
(A-l-the-mendaer-is-Qn-^etive-militar-y services
(B) compliancehardship;
4C-)-the — member—is—a—nonresident ■member whose primary office is outside the-state of Florida; or
(D)- the member is a full-time governmental-employeeT
(2) A member of The F-lorlda-Bar- is permanently-exempt-from-the portion of BSCR^described.in-rule ■ 6-12.1(b)(l)(B) above-ifc--
(A)-the-member-has been in private practice -(-non-governmental) in a foreign jurisdic-tion-on-a-full-time basis for at least the 5-year-pe-riod-immediately preceding the commencement of the-praetice-of law in — Florida,.subject - to the rules of the entity regulaimg-the-foreignpractice; and
(B), the member has -completed 30 heur-s-of-eontinuing legal education during the immediately preceding- 5-year period; and,
(-C) the prior practice has-reasonably ■prepared the member-for-the ■ anticipated type-of-practice in Florida.
(e)- Fees. The board-ef-gover-nors of The Flerida-Bar-may- require a reasonable-fee to-d>e-paid-to-The -Florida Bar in connection- -with each mem-berk -BSCR compliance.
(-^-Policies. The board of-legal -specialization and education-of-The-Florida Bar shall adopt-pel-ieies-necessary to implement BSCR, subject -to- the approval of the board of governors.
RULE-6-12.2 ADMINISTRATION ■
(a)- ResponsibiIit)e The board of legal specialization and education shall oversee compliance■with the BSCR^-as-hereln-pro-vided- — T-he-ALB ■ shall be responslble-for- *43 the^ planning, content, and presentation-of the BSCR seminars.
(b)-PelegatiQH — ef—Authority.-The board of legal specialization- and education may delegate-to-the-staff-of The Florida Bar any responsibility set forth herein-,except that -of--grnnti-ng--a-waiver or exemption from BSCR.
(c) Maintenance — ef—Records.—The Florida Bar shall maintain a record of each member’s compliance-with-BSG-R.-
RULE 6-12.3 BASIC SKILLS COURSE STANDARDS
The YLD shall establish minimum-quality standards for the BSCR that shall- include-instruction on discipline, ethics, and responsibi-llt-y-to-the public.
(b) Applicability. Every member admitted to The Florida Bar after October 1, 1988 shall comply with the BSCR.
RULE 6-12.2, ADMINISTRATION
(a) Responsibility. The YLD shall be responsible for the planning, content, and presentation of programs for BSCR compliance. The YLD shall also establish minimum quality standards for the Practicing with Professionalism program, to include instruction on discipline, ethics, professionalism, and responsibility to the public. The BLSE shall oversee member compliance with BSCR and adopt policies necessary for implementation. Such policies shall be subject to approval by the board of governors.
(b) Delegation of Authority. The BLSE may delegate to the staff of The Florida Bar any responsibility set forth herein, except that of denying a waiver or exemption from BSCR.
(c) Waiver. On special application and for good cause shown, the BLSE may adjust the time for completion, may waive compliance, or accept a substitute program, for either component of BSCR.
(d)Maintenance of Records. The Florida Bar shall maintain a record of each member’s compliance with BSCR.
RULE 6-12.3 REQUIREMENT
(a) Course Components. Compliance with BSCR shall include in-person attendance at:
(1) the Practicing with Professionalism program sponsored by the YLD; and
(2) 2 elective, basic, substantive continuing legal education programs sponsored by the YLD.
(b) Time for Completion. BSCR shall be completed as follows:
(1) the Practicing with Professionalism program shall be completed no sooner than 8 months prior to or no later than 12 months following admission to The Florida Bar; and
(2) the 2 elective, basic, substantive continuing legal education programs shall be completed during the member’s initial 3-year continuing legal education requirement reporting cycle assigned upon admission to The Florida Bar.
RULE 6-12.4 DEFERMENT AND EXEMPTION
(a) Deferment. A member of The Florida Bar is eligible to defer compliance with the BSCR if:
(1) the member is on active military duty;
(2) compliance would create an undue hardship;
(3) the member is a nonresident member whose primary office is outside the state of Florida;
(4) the member is a full-time governmental employee; or
*44 (5) the member elects inactive membership status in The Florida Bar.
(b) Deferment Expiration. A deferment shall expire at the time the member is no longer eligible for deferment. Upon expiration, a member must:
(1) promptly notify The Florida Bar of the date deferment expired;
(2) attend the Practicing with Professionalism program within 12 months of deferment expiration; and
(3) attend 2 elective, basic, substantive continuing; legal education programs sponsored by the YLD within 24 months of deferment expiration.
(c) Exemption. An exemption from rule 6-12.3(a)(2) shall be granted if:
(1) a member has been continuously engaged in the practice of law (non-governmental) in a foreign jurisdiction for a period of 5 years;
(2) within the immediate 3-year period, the member can demonstrate completion of 30 hours of approved continuing legal education; and
(3) the member attests that the continuing legal education completed has reasonably prepared the member for the anticipated type of practice in Florida.
RULE 6-12.45 NONCOMPLIANCE AND SANCTIONS
(a) Notice of Noncompliance. If a member fails to comply with this chapter-in any respect, rule, the member shall be deemed delinquent as provided elsewhere in the Rules Regulating The Florida Bar. tThe board-of-legai-speeiallgatiou-and-edu-cation BLSE shall promptly send a notice of noncompliance to such member. The member shall be deemed delinquent in accordance with rule 1-3.6)- Rules Regulating The Florida Bar.
(b) Appeal to the Board of Governors. A delinquent member shall have the right to appeal the determination to A decision of the board of -legal — speeialiaation^-a-nd education may be appealed-to the board of governors of The--Florida-Bar-^Appeal-s-te the board of-governors-shall be governed by the policies-promu-l-gate-d under these rules, under such rules and regulations as it may prescribe.
(c) Appeal to the Supreme Court of Florida. A delinquent member shall have the right to appeal the determination of the board of governors to A decision of the board — of- governors may be appealed by the — affected—member to the Supreme Court of Florida. — Appeals-to-the-court shall be governed by -the- -policies- promulgated under these rules, under such rules and regulations as it may prescribe.
(d) Exhaustion of Remedies. A delinquent member must exhaust each of the remedies provided under these rules in the order enumerated before proceeding to the next remedy.
(e) Tolling Time for Compliance. An appeal shall toll the time a member has for shoving compliance with BSCR.- determination of noncompliance and resulting delinquency until such time as all appeals have been completed or the time for taking same has expired.
RULE 6-12.56 REINSTATEMENT
Any member deemed delinquent for-fail-u-re — to-emeet in completion of the BSCR may be reinstated by the executive director of The.Florida — Bar- or board of governors of The Florida Bar upon a showing that the noncompliance of compliance has been corrected with the BSCR and upon payment of a uniform reinstatement fee, as established by the board of governors, of The Florida Bar.
*45 RULE 6-12.67 CONFIDENTIALITY
The files and records maintained regarding appeals conducted under this rule and any hearings condueted-pur-suant to this rule in connection therewith shall be confidential until such time as delinquency or compliance with the BSCR is established, whichever shall-oeeur-first the appeals process has concluded. If a member is deemed delinquent pursuant to this rule, that fact shall be public information.
RULE 6-12.58 DISCIPLINARY ACTION
The board — of-.legal specialization and education BLSE may refer a member who makes a misrepresentation of a material fact concerning compliance with or exemption from the BSCR for disciplinary proceedings under chapters 3 and 4, investigation as provided elsewhere in these Rules Regulating The Florida Bar.
RULE 10-4.1 GENERALLY
(a) Appointment and Terms. Each circuit committee shall be appointed by the court on advice of the board of governors and shall consist of not fewer than 3 members, at least one-third of whom shall be nonlawyers. All appointees shall be residents of the circuit or have their principal office in the circuit. The terms of the members of circuit committees shall be for 1 year from the date of appointment by the court or until such time as their successors are appointed and qualified. Continuous service of a member shall not exceed 3 years. A member shall not be reappointed for a period of 3 years after the end of the member’s third term provided, however, the expiration of the term of any member shall not disqualify that member from concluding any investigations pending before that member. Any member of a circuit committee may be removed from office by the board of governors.
(b) Committee Chair. For each circuit committee there shall be a chair designated by the board of governors. A vice-chair and secretary may be designated by the chair of each circuit committee. The chair shall be a member of The Florida Bar.
(c) Quorum. Three members of the circuit committee or a majority of the members, whichever is less, shall constitute a quorum.
(d) Panels. The circuit committee may be divided into panels of not fewer than 3 members, 1 of whom must be a nonlawyer. Division of the circuit committee into panels shall only be upon concurrence of the designated reviewer and thé chair of the circuit committee. The 3-member panel shall elect 1 of its members to preside over the panel’s actions. If the chair or vice-chair of the circuit committee is a member of a 3-member panel, the chair or vice-chair shall be the presiding officer.
(e) Duties. It shall be the duty of each circuit committee to investigate, with dispatch, all reports of unlicensed practice of law and to make prompi^written report of its investigation and findings to UPL staff counsel. In addition, the duties of the circuit committee shall include, but not be limited to:
(1) exercising final authority to close cases not deemed by the circuit committee to warrant further action by The Florida Bar except those cases to which UPL staff counsel objects to the closing of the case;
(2) exercising final authority to close cases proposed to be resolved by cease and desist affidavit except those cases to which UPL staff counsel objects to the acceptance of a cease and desist affidavit;
(3) forwarding to UPL staff counsel for review by the standing committee recom *46 mendations for closing cases by a cease and desist affidavit that includes a monetary penalty not to exceed $500 per incident; and
(4) forwarding to UPL staff counsel recommendations for litigation to be reviewed by the standing committee.
(f) Circuit Committee Meetings. Circuit committees should meet at regularly scheduled times, not less frequently than quarterly each year. Either the chair or vice chair may call special meetings. Circuit committees should meet at least monthly during any period when the committee has 1 or more pending cases assigned for investigation and report. The time, date and place of regular monthly meetings should be set in advance by agreement between each committee and UPL staff counsel.
RULE 10-7.2 PROCEEDINGS FOR INDIRECT CRIMINAL CONTEMPT
(a) Petitions for Indirect Criminal Contempt. Nothing set forth herein shall be construed to prohibit or limit the right of the court to issue a permanent injunction in lieu of or in addition to any punishment imposed for an indirect criminal contempt.
(1) Upon receiving a sworn petition of the president, executive director of The Florida Bar, or the chair of the standing committee7 alleging facts indicating that a person, firm, or corporation is or may be unlawfully practicing law, and containing a prayer for a contempt citation, the court may issue an order directed to the respondent, stating the essential allegations charged and requiring the respondent to appear before a referee appointed by the court to show cause why the respondent should not be held in contempt of this court for the unlicensed practice of law. The referee shall be a circuit judge of the state of Florida. The order shall specify the time and place of the hearing, and a reasonable time shall be allowed for preparation of the defense after service of the order on the respondent.
(2) The respondent, personally or by counsel, may move to dismiss the order to show cause, move for a statement of particulars, or answer such order by way of explanation or defense. All motions and the answer shall be in writing. A respondent’s omission to file motions or answer shall not be deemed as an admission of guilt of the contempt charged.
(b) Indigency of Respondent. Any respondent who is determined to be indigent by the referee shall be entitled to the appointment of counsel.
(1) Affidavit. A respondent asserting in-digency shall file with the referee a completed affidavit containing the financial information required herein and stating that the affidavit is signed under oath and under penalty of perjury. The affidavit must contain the following financial information and calculations as to the respondent’s income:
(A) Net income. Total salary and wages, minus deductions required by law, including court-ordered support payments.
(B) Other income. Including, but not limited to, social security benefits, union funds, veterans’ benefits, workers’ compensation, other regular support from absent family members, public or private employee pensions, unemployment compensation, dividends, interest, rent, trusts, and gifts.
(C) Assets. Including, but not limited to, cash, savings accounts, bank accounts, stocks, bonds, certificates of deposit, equity in real estate, and equity in a boat, motor vehicle, or other tangible property. *47 In addition to the financial information, the affidavit must contain the following statement: “I, (name of accused person), agree to report any change in my financial situation to the court or to the indigency examiner.”
(2) Determination. After reviewing the affidavit and questioning the respondent, the referee shall make one of the following determinations: the respondent is indigent; or the respondent is not indigent.
A respondent is indigent if:
(A) the income of the person is equal to or below 250 percent of the then-current federal poverty guidelines prescribed for the size of the household of the accused by the United States Department of Health and Human Services or if the person is receiving Aid to Families with Dependent Children (AFDC), poverty-related veterans’ benefits, or Supplemental Security Income (SSI); or
(B) the person is unable to pay for the services of an attorney without substantial hardship to his or her family.
(3) Presumption. In proceedings for the determination of indigency the referee shall determine whether any of the following facts exist, and the existence of any such fact shall create a presumption that the respondent is not indigent:
(A) the respondent has been released on bail in the amount of $5,000 or more;
(B) the respondent owns, or has equity in, any intangible or tangible personal property or real property, or the expectancy of an interest in any such property; or
(C) the respondent retained private counsel immediately before or after filing the affidavit asserting indigency as required herein.
(c) Proceedings Before the Referee. Proceedings before the referee shall be in accordance with the following:
(1) Venue for the hearing before the referee shall be in the county where the respondent resides or where the alleged offense was committed, whichever shall be designated by the court.
(2) The court or referee may issue an order of arrest of the respondent if the court or referee has reason to believe the respondent will not appear in response to the order to show cause. The respondent shall be admitted to bail in the manner provided by law in criminal cases.
(3) The respondent shall be arraigned at the time of the hearing before the referee, or prior thereto upon request. A hearing to determine the guilt or innocence of the respondent shall follow a plea of not guilty. The respondent is entitled to be represented by counsel, have compulsory process for the attendance of witnesses, and confront witnesses against the respondent. The respondent may testify in the respondent’s own defense. No respondent may be compelled to testify. A presumption of innocence shall be accorded the respondent. The Florida Bar, which shall act as prosecuting authority, must prove guilt of the respondent beyond a reasonable doubt.
(4) Subpoenas for the attendance of witnesses and the production of documentary evidence shall be issued in the name of the court by the referee upon request of a party. Failure or refusal to comply with any subpoena shall be contempt of court and may be punished by the court or by any circuit court where the action is pending or where the contemnor may be found, as if said refusal were a contempt of that court.
(4 5) The referee shall hear all issues of law and fact and all evidence and testimony presented shall be transcribed.
*48 (5 6) At the conclusion of the hearing, the referee shall sign and enter of record a judgment of guilty or not guilty. There should be included in a judgment of guilty a recital of the facts constituting the contempt of which the respondent has been found and adjudicated guilty, and the costs of prosecution, including investigative costs, shall be included and entered in the judgment rendered against the respondent.
(6 7) Prior to the pronouncement of a recommended sentence upon a judgment of guilty, the referee shall inform the respondent of the accusation and judgment and afford the opportunity to present evidence of mitigating circumstances. The recommended sentence shall be pronounced in open court and in the presence of the respondent.
(d) Review by the Supreme Court of Florida. The judgment and recommended sentence, upon a finding of “guilty,” together with the entire record of proceedings shall then be forwarded to this court for approval, modification, or rejection based upon the law. The respondent may file objections, together with a supporting brief or memorandum of law, to the referee’s judgment and recommended sentence within 30 days of the date of filing with the court of the referee’s judgment, recommended sentence, and record of proceedings. The Florida Bar may file a responsive brief or memorandum of law within 20 days after service of respondent’s brief or memorandum of law. The respondent may file a reply brief or memorandum of law within 10 days after service of The Florida Bar’s responsive brief or memorandum of law.
(e) Fine or Punishment. The punishment for an indirect criminal contempt under this chapter shall be by fine, not to exceed $2500, imprisonment of up to 5 months, or both.
(f) Costs. The court may also award costs.
RULE 10-9.1 PROCEDURES FOR ISSUANCE OF ADVISORY OPINIONS ON THE UNLICENSED PRACTICE OF LAW
(a) Definitions.
(1) Committee. The standing committee as constituted according to the directives contained in these rules.
(2) Petitioner. An individual or organization seeking guidance as to the applicability, in a hypothetical situation, of the state’s prohibitions against the unlicensed practice of law.
(3) Public Notice. Publication in a newspaper of general circulation in the county in which the hearing will be held and in The Florida Bar News.
(4) Court. The Supreme Court of Florida (or such other court in the state' of Florida as the supreme court may designate).
(b) Requests for Advisory Opinions. The committee shall respond to ■ written requests from all persons and entities seeking-advisor-y-opinions-conGemlng-aetiv-ities — that—may— constitute-the — unlicensed practice of law. — Sueh-requests-shah-be A petitioner requesting a formal advisory opinion concerning activities that may constitute the unlicensed practice of law shall do so by sending the request in writing addressed to The UPL Department, The Florida Bar, 650 Apalachee Parkway, Tallahassee, Florida 32399-2300. The request for an advisory opinion shall state in detail all operative facts upon which the request for opinion is based and contain the name and address of the petitioner. The request shall be reviewed by UPL staff counsel. If the request complies with the requirements of the rule as stated *49 herein, the request will be placed on the agenda for the next scheduled meeting of the committee. At that meeting, the committee will determine whether to accept the request, such determination being within the discretion of the committee. Should the committee accept the request, a public hearing as provided in rule 10-9.1(f) shall be scheduled.
(c) Limitations on Opinions. No opinion shall be rendered with respect to any case or controversy pending in any court or tribunal in this jurisdiction and no informal opinion shall be issued except as provided in rule 10 — 9.1(g)(1).
(d) Services of Voluntary Counsel. The committee shall be empowered to request and accept the voluntary services of a person licensed to practice in this state when the committee deems it advisable to receive written or oral advice regarding the question presented by the petitioner.
(e) Conflict of Interest. Committee members shall not participate in any matter in which they have either a material pecuniary interest that would be affected by a proposed advisory opinion or committee recommendation or any other conflict of interest that should prevent them from participating. However, no action of the committee will be invalid where full disclosure has been made and the committee has not decided that the member’s participation was improper.
(f) Notice, Appearance, and Service.
(1)At least 30 days in advance of the committee meeting at which initiab-action is to be taken a hearing is to be held with respect to a potential advisory opinion, the committee shall give public notice of the date, time, and place of the meeting hearing, state the question presented, and invite written comments on the question. On the announced date the committee shall hold a public hearing at which any person affected shall be entitled to present oral testimony and be represented by counsel. Oral testimony by other persons may be allowed by the committee at its discretion. At the time of or prior to the hearing any other person shall be entitled to file written testimony on the issue before the committee. Additional procedures not inconsistent with this rule may be adopted by the committee.
(2) The committee shall issue either a written proposed advisory opinion, a letter that declines to issue an opinion, or an informal opinion as provided in rule 10-9.1(g)(1). No other form of communication shall' be deemed to be an advisory opinion.
(3) A proposed advisory opinion shall be in writing and shall bear a date of issuance. The proposed opinion shall prominently bear a title indicating that it is a proposed advisory opinion and a disclaimer stating that it is only an interpretation of the law and does not constitute final court action. The committee shall arrange for the publication of notice of filing the proposed advisory opinion and a summary thereof in The Florida Bar News within a reasonable time. Interested parties shall be furnished a copy of the full opinion upon request.
(g)Service and Judicial Review of Proposed Advisory Opinions.
(1) In the case of any proposed advisory opinion in which the standing committee concludes that the conduct in question is not the unlicensed practice of law, it shall decide, by a vote of a majority of the committee members present, either to publish the advisory opinion as provided in rule 10 — 9.1(f)(3) as an informal advisory opinion, or to file a copy of the opinion with the court as provided in rule 10-9.1(g)(2).
*50 (2) In the case of any proposed advisory opinion in which the standing committee concludes that the conduct in question constitutes or would constitute the unlicensed practice of law, the committee shall file a copy of the opinion and all materials considered by the committee in adopting the opinion with the clerk of the court. The proposed advisory opinion, together with notice of the filing thereof, shall be furnished by certified mail to the petitioner.
(3) Within 30 days of the filing of the opinion, the petitioner may file objections and a brief or memorandum in support thereof, copies of which shall be served on the committee. Any other interested person may, within 30 days of the filing of the opinion, seek leave of the court to file and serve a brief, whether in support of or in opposition to the opinion, in accordance with this same procedure. The committee may file a responsive brief within 20 days of service of the initial brief. The petitioner, as well as other interested persons with having leave of court, may file a reply brief within 10 days of service of the responsive brief. At uts discretion, the court shall permit reasonable extension of these time periods. Oral argument will be allowed at the court’s discretion. The Florida Rules of Appellate Procedure shall otherwise govern the above methods of filing, service, and argument.
(4) Upon the expiration of the time to file objections, briefs, and replies thereto, the court shall review the advisory opinion, regardless of whether any such objections are in fact made, together with any briefs or objections filed in support of or in opposition to such opinion. Upon review, it shall approve, modify, or disapprove the advisory opinion, and the ensuing opinion shall have the force and effect of an order of -this the court and be published accordingly. There shall be no further review of the opinion except as granted by this the court in its discretion, upon petition to this the court.

. The amendments to Bylaw 2-9.11 (Assistance to Members Suffering From Impairment Related to Chemical Dependency or Psychological Problems); rule 6-3.7 (Revocation of Certification); rule 6-3.8 (Manner of Certification); 6-3.9 (Right of Appeal); rule 6-3.11 (Confidentiality); rule 6-3.12 (Amendments); rule 6-12.5 (Reinstatement); rule 6-12.6 (Confidentiality); and 6-12.7 (Disciplinary Action) either solely involve renumbering or are stylistic in nature.